**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Crown Castle USA Inc., Crown Communication Inc., Crown Castle South LLC, Crown Castle PT Inc., Crown Atlantic Company LLC, Crown Castle GT Company LLC, Crown Castle MU LLC, Crown Castle Towers 05 LLC, Global Signal Acquisitions II LLC, Global Signal Acquisitions III LLC, GoldenState Towers LLC, Pinnacle Towers Acquisition LLC, Pinnacle Towers LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| TOWER REINFORCEMENT, INC., VERTICAL SOLUTIONS, INC., | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

AND NOW come the Plaintiffs, Crown Castle USA Inc., Crown Communication Inc., Crown Castle South LLC, Crown Castle PT Inc., Crown Atlantic Company LLC, Crown Castle GT Company LLC, Crown Castle MU LLC, Crown Castle Towers 05 LLC, Global Signal Acquisitions II LLC, Global Signal Acquisitions III LLC, GoldenState Towers LLC, Pinnacle Towers Acquisition LLC, Pinnacle Towers LLC, by and through their attorney, Amy N. Williamson, Esquire, and file the within Complaint in Civil Action, averring as follows:

**PARTIES**

1.      Plaintiff, Crown Castle USA Inc., is a corporation duly organized under the laws of Pennsylvania, with its principal place of business at 2000 Corporate Drive, Canonsburg, Pennsylvania, 15317.

2.      Plaintiff, Crown Communication Inc., is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

3.      Plaintiff, Crown Castle South LLC, is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

4.      Plaintiff, Crown Castle PT Inc., is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

5.      Plaintiff, Crown Atlantic Company LLC, is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

6.      Plaintiff, Crown Castle GT Company LLC, is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

7.      Plaintiff, Crown Castle MU LLC, is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

8.      Plaintiff, Crown Castle Towers 05 LLC, is a corporation duly organized

2

under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

9.      Plaintiff, Global Signal Acquisitions II LLC, is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

10.     Plaintiff, Global Signal Acquisitions III LLC, is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

11.     Plaintiff, GoldenState Towers LLC, is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

12.     Plaintiff, Pinnacle Towers Acquisition LLC, is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

13.     Plaintiff, Pinnacle Towers LLC, is a corporation duly organized under the laws of Delaware, with its principal place of business at 1220 Augusta Drive, Suite 500, Houston, Texas, 77057.

14.     Plaintiffs are collectively referred to herein as "Plaintiffs" or "Crown". Crown is a company engaged in the business of building, owning, managing, leasing or otherwise operating wireless telecommunication infrastructures, including an extensive network of towers throughout the United States.

15.     Defendant, Tower Reinforcement Inc., ("TRI") is a corporation duly organized under the laws of Indiana, with its principal place of business at 2301 W.

3

Michigan Avenue, Suite I, Evansville, IN 47712.

16.     Upon information and belief, TRI is engaged in the business of designing, constructing, and/or installing tower reinforcement systems and provides related services throughout the United States.

17.     Defendant, Vertical Solutions Inc., ("VSI") is a corporation duly organized under the laws of North Carolina, with its principal place of business at 2002 Production Drive, Apex, North Carolina 27539 and a mailing address of PO Box 579, Holly Springs, North Carolina 27540.

18.     Upon information and belief, VSI is engaged in the business of designing, constructing, and/or installing tower reinforcement systems and provides related services throughout the United States.

## JURISDICTION AND VENUE

19.     Plaintiff hereby incorporates by reference all preceding paragraphs as though they were set forth more fully at length herein.

20.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiffs and Defendants.

21.     Venue is proper for this civil action pursuant to 28 U.S.C. 1391(a) as a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and a portion of the property at issue is situated in this judicial district.

22.     Venue is further proper for this civil action pursuant to two (2) separate agreements entered into between Crown and TRI: the Construction Services Master Agreement dated February 7, 2005 (attached hereto as Exhibit "A") and the A&E Master

Services Agreement dated February 7, 2005 (attached hereto as Exhibit "B").

23.     Venue is further proper for this civil action pursuant to the Architectural and Engineering Master Services Agreement entered into between Crown and VSI dated September 18, 2008 ("VSI Agreement" attached hereto as Exhibit "C").

## FACTUAL BACKGROUND

24.     Crown leases, manages, owns or otherwise operates, among other things, wireless telecommunication towers referred to as monopoles.   Often, said monopoles require structural strengthening, reinforcements, alterations, or other maintenance work referred to as tower reinforcement systems or modifications.

25.     At all times relevant to this Complaint, upon information and belief, TRI and/or VSI designed, fabricated, constructed and/or installed modifications on behalf of Crown at approximately two hundred and forty eight (248) monopoles located throughout the United States.  Said monopoles are specifically identified in the spreadsheet attached as Exhibit "D" and hereinafter collectively referred to as "Sites".

26.     The Sites are either owned, leased or managed by one of the Crown entities listed in paragraphs 1 – 13 herein.

27.     The aforementioned TRI and/or VSI design, fabrication, construction and/or installation of modifications at the Sites is collectively referred to herein as "Modification Work".

### Tower Reinforcement, Inc.

28.     On or about February 7, 2005, Crown initially retained TRI to perform architectural and engineering services as well as general contracting services, including but not limited to the Modification Work at issue.  See Exhibits "A" and "B".

5

29.     On or about August 12, 2005, Crown and TRI entered into a "Project Appendix" which includes supplemental terms to the Construction Services Master Agreement dated February 7, 2005.  A copy of said Project Appendix is attached hereto as  Exhibit "E" and referred to herein as "Crown/TRI Project Appendix".

30.     The Construction Services Master Agreement dated February 7, 2005, the A&E Master Services Agreement dated February 7, 2005 and the Crown/TRI Project Appendix are hereinafter collectively referred to as "TRI Agreements".

31.     Pursuant to the TRI Agreements, TRI directly performed some portions of the Modification Work, but also subcontracted portions of the Modification Work to other firms such as VSI.

32.     More specifically, upon information and belief, TRI directly performed all of the construction and general contracting work included in the Modification Work at each of the Sites.

33.     Upon information and belief, TRI did not perform the design work included in the Modification Work; rather, TRI acted as the construction manager and general contractor of the Modification Work while subcontracting the design work portion of the Modification Work to VSI as to the majority of the Sites.

34.     TRI guaranteed its work to be performed in a first class manner free from defects in materials and in conformity with the standards and practice applicable in the wireless telecommunications industry.

35.     TRI guaranteed that its work would meet the performance requirements set forth in the modification specifications.

36.     Consistent with the TRI Agreements, TRI forwarded quotes to Crown

personnel for services including but not limited to the Modification Work at issue to Crown.

37.     In response thereto, Crown issued purchase orders to TRI for the Modification Work ("Crown/TRI Purchase Orders").  A sample Crown/TRI Purchase Order is attached hereto as Exhibit "F".

38.     Pursuant to the TRI Agreements and subsequent Crown/TRI Purchase Orders, TRI agreed to provide, among other things, the Modification Work at issue.

39.     In addition, pursuant to the Crown/TRI Project Appendix, TRI agreed to be primarily responsible for the Modification Work, regardless of any portion(s) thereof that were subcontracted to lower tier firms such as VSI. See paragraph 2 of Exhibit A (Special Terms and Conditions) of the Crown/TRI Project Appendix attached hereto as Exhibit "E".

### Vertical Solutions, Inc.

40.     On September 18, 2009, Crown initially retained VSI to provide architectural and engineering services, including but not limited to the Modification Work at issue. See Exhibit "C".

41.     VSI guaranteed its work to be performed in a first class manner free from defects in materials and in conformity with the standards and practice applicable in the wireless telecommunications industry.

42.     VSI guaranteed that its work would meet the performance requirements set forth in the modification specifications.

43.     Consistent with the VSI Agreement, VSI forwarded quotes to Crown personnel for services including but not limited to the Modification Work at issue.

44.     In response thereto, Crown issued purchase orders to VSI for the

Modification Work ("Crown/VSI Purchase Orders").  A sample Crown/VSI Purchase Order is attached hereto as Exhibit "G".

45.     Further, VSI contracted with TRI for the design portion of the Modification Work subcontracted by TRI to VSI.

46.     Upon information and belief, TRI issued purchase orders to VSI for said design work included in the Modification Work at issue ("TRI/VSI Purchase Orders").  A sample  TRI/VSI Purchase Order is attached hereto as Exhibit "H".

47.     At all times relevant to this Complaint, said design work was provided by VSI to the ultimate benefit of Crown.

48.     The Modification Work performed by VSI, including but not limited to the design portion, was done so with the knowledge and intent to ultimately benefit Crown.

49.     In fact, upon information and belief, VSI and TRI expressed their intentions for the Modification Work to benefit Crown during the time that TRI/VSI Purchase Orders were being issued by TRI and accepted by VSI.

50.     Pursuant to the VSI Agreement, subsequent Crown/VSI Purchase Orders and TRI/VSI Purchase Orders, VSI agreed to provide, among other things, the Modification Work at issue.

### Defective Modification Work

51.     Since the Modification Work was performed, Crown has learned of a significant number of modification design and/or construction deficiencies at the Sites.

52.     Accordingly, Crown commenced a preliminary investigation of the Modification Work at the Sites.

53.     On information and belief, each of the Sites Crown investigated were

designed, fabricated, constructed and/or installed by TRI and/or VSI.

54.     Crown's preliminary investigation revealed, among other things, that one or more aspects of the Modification Work at approximately ninety-four (94) of the Sites failed to comply with the design and/or construction specifications and/or contained numerous design, fabrication, construction and/or installation defects contrary to accepted industry standards.

55.     Crown's preliminary investigation further revealed at least six (6) different types of design or construction failures as to the monopoles at the Sites as follows: anchor assemblies, bar splice jumps, flange jumps, anchor assemblies and flange jumps, anchor welds, and stiffener/bar welds.

56.     Crown discovered that, due to the defective Modification Work, many of the monopoles at issue were not adequately designed or constructed to support the number of carriers used or intended to be utilized on those monopoles, which intended use was known to TRI and VSI at the time of the Modification Work.

57.     Subsequently, TRI performed necessary repairs to the defective Modification Work at approximately twelve (12) Sites.

58.     To date, VSI has not performed any repairs to the defective Modification Work at issue.

59.     Upon information and belief, Crown will incur additional investigation costs of approximately $200,000.00 - $400,000.00 to ascertain the extent of the defective Modification Work.

60.     Upon information and belief, Crown will incur $4,000,000.00 - $5,000,000.00 in repair costs as a result of the defective Modification Work.

61.     In total, the defective Modification Work performed by TRI and VSI caused Crown to sustain damages in excess of $5,000,000.00.

## COUNT I – BREACH OF CONTRACT
## CROWN V. TRI

62.     Crown hereby incorporates by reference all preceding paragraphs as though they were set forth more fully at length herein.

63.     Pursuant to the TRI Agreements and subsequent Crown/TRI Purchase Orders, TRI agreed to perform for Crown certain Modification Work, which included various aspects of modification design, fabrication, construction, installation and/or general contractor work.

64.     For all Modification Work performed pursuant to the TRI Agreements, TRI agreed to design, fabricate, construct and/or perform general contractor work in accordance with the modification design documents and generally accepted industry standards.

65.     Specifically, TRI agreed to provide Crown materials used in the course of the Modification Work be of "first class quality" and Modification Work "free from defects in design, material and workmanship."  TRI further agreed to perform the Modification Work "in first class, workmanlike manner in conformity with the highest standards applicable to … the wireless communications contracting industry", among other things.  See Section 10A of TRI General Construction Services Master Agreement, Exhibit "A".

66.     Upon information and belief, TRI constructed the modifications and performed general contractor work at the Sites purportedly pursuant to the TRI Agreements and Crown/TRI Purchase Orders.

67.     TRI breached the TRI Agreements, Crown/TRI Purchase Orders, and the specifications on the modification design documents by, among other things:

a. Failing to design, fabricate, construct, and/or install the modifications in accordance with the TRI Agreements and/or the modification design specifications and generally accepted industry standards as described in detail above;

b. Failing to design, fabricate, construct and/or install modifications that would be suitable to accommodate the number of carriers intended, which intended use was known to TRI;

c. Failing to design fabricate, construct and/or install modifications that complied with the tower loading specifications and generally accepted industry standards;

d. Performing Modification Work that created an overstressed condition at the monopole anchor, bar splice jumps, flange jumps, anchor assemblies and flange jumps, anchor welds, and stiffener/bar welds;

e. As general contractor, failing to ensure that all portions of the Modification Work were done so free of defects, in accordance with the modification specifications and/or within general accepted industry standards; and

f. Otherwise performing defective Modification Work.

68.     As a direct and proximate result of TRI's breach of the TRI Agreements, Crown/TRI Purchase Orders, and/or the terms specified on the modification design documents, Crown has and/or will incur:

a. Substantial investigation costs to ascertain the extent to which the

> Modification Work is defective and/or fail to comply with the TRI
> Agreements, the design specifications and/or generally accepted industry
> standards, and analyze appropriate corrective measures;
>
> b. Substantial costs to remedy the defective Modification Work; and
>
> c. The loss of the benefit of its bargain.

69.      Both the TRI General Construction Services Master Agreement and the TRI A&E Master Services Agreement requires TRI, among other things, to pay Crown "all costs and expenses (including reasonable attorneys' fees, investigation and remediation expenses)" incurred in a suit filed to enforce the terms of the TRI Agreements. <u>See</u> Section 11 of Exhibit "A" and Section 8 of Exhibit "B", respectively.

70.      Further, Section 10(c) of the TRI General Construction Services Master Agreement requires TRI, among other things, to pay Crown for all of the expenses related to "examination, any demolition and any satisfactory reconstruction" of defective material and/or work due to the fault of TRI or its "Lower Tier Contractors", i.e. VSI. <u>See</u> Exhibit "A".

WHEREFORE, Crown respectfully requests this Honorable Court to enter judgment in its favor and against TRI in an amount in excess of $75,000, plus costs, attorneys fees, interest and such other relief as this Court deem just and proper.

JURY TRIAL DEMANDED.


## <u>COUNT II – BREACH OF EXPRESS WARRANTY</u>
## <u>CROWN v. TRI</u>

71.      Crown hereby incorporates by reference all preceding paragraphs as though they were set forth more fully at length herein.

72.     Pursuant to Section 10 of the TRI General Construction Services Master Agreement, TRI expressly warranted that all materials incorporated in the Modification Work shall be "new and merchantable and of first class quality", and that all of its work shall be performed in a "first class, workmanlike manner in conformity with the highest standards applicable … in the wireless communications contracting industry", and "free from defects in design, material and workmanship".  <u>See</u> Exhibit "A".

73.     TRI's design, fabrication, construction and/or general contractor services related to the Modification Work at issue was not free from defects in design, material and workmanship.   Moreover, said Modification Work was not performed in a first class, workmanlike manner, also failing in many respects to meet generally accepted industry standards.

74.     TRI breached the express warranty contained in Section 10 of the TRI General Construction Services Master Agreement by, among other things:

    a. Failing to design, fabricate, construct, and/or install the modifications in accordance with the TRI Agreements, Crown/TRI Purchase Orders and/or the modification design specifications and generally accepted industry standards as described in detail above;

    b. Failing to design, fabricate, construct and/or install modifications that would be suitable to accommodate the number of carriers intended, which intended use was known to TRI;

    c. Failing to design fabricate, construct and/or install modifications that complied with the tower loading specifications and generally accepted industry standards;

d. Performing Modification Work that created an overstressed condition at the monopole anchor, bar splice jumps, flange jumps, anchor assemblies and flange jumps, anchor welds, and stiffener/bar welds;

e. As general contractor, failing to ensure that all portions of the Modification Work were done so free of defects, in accordance with the modification specifications and/or within general accepted industry standards; and

f. Otherwise performing defective Modification Work.

75.     As a direct and proximate result of TRI's breach of the TRI Agreements, Crown/TRI Purchase Orders and/or the terms specified on the modification design documents, Crown has and/or will incur:

a. Substantial investigation costs to ascertain the extent to which the Modification Work is defective and/or fail to comply with the TRI Agreements, Crown/TRI Purchase Orders, the design specifications and/or generally accepted industry standards, and analyze appropriate corrective measures;

b. Substantial costs to remedy the defective Modification Work; and

c. The loss of the benefit of its bargain.

WHEREFORE, Crown respectfully requests this Honorable Court to enter judgment in its favor and against TRI in an amount in excess of $75,000, plus costs, attorneys fees, interest and such other relief as this Court deem just and proper.

JURY TRIAL DEMANDED.

## COUNT III – BREACH OF IMPLIED WARRANTY
## CROWN V. TRI

76.     Crown hereby incorporates by reference all preceding paragraphs as

though they were set forth more fully at length herein.

77.     TRI had an implied warranty obligation to perform the Modification Work in accordance with generally accepted industry standards and in a reasonably workmanlike manner such that the modifications would be fit for their intended purpose, of which purpose TRI was aware.

78.     TRI's implied warranty obligation included an obligation to perform the Modification Work such that the modifications would not cause failures in structural analysis testing, and that when designed, constructed, and installed, they could accommodate installation of the number of carriers' antennas intended

79.     TRI's implied warranty obligation included an obligation to perform the Modification Work in accordance with the design specifications to ensure that the modifications would not cause failed structural analysis testing, would not cause overstress, and would allow the monopoles at the Sites to have the capacity to support the stated design loads.

80.     TRI failed to perform the Modification Work in accordance with generally accepted industry standards and in a reasonably workmanlike manner and so that the modifications would be fit for their intended purpose, of which purpose TRI was aware, by among other things:

        a.   Failing to design, fabricate, construct, and/or install the modifications in accordance with the TRI Agreements, Crown/TRI Purchase Orders and/or the modification design specifications and generally accepted industry standards as described in detail above;

        b.   Failing to design, fabricate, construct and/or install modifications that

would be suitable to accommodate the number of carriers intended, which intended use was known to TRI;

c. Failing to design fabricate, construct and/or install modifications that complied with the tower loading specifications and generally accepted industry standards;

d. Performing Modification Work that created an overstressed condition at the monopole anchor, bar splice jumps, flange jumps, anchor assemblies and flange jumps, anchor welds, and stiffener/bar welds;

e. As general contractor, failing to ensure that all portions of the Modification Work were done so free of defects, in accordance with the modification specifications and/or within general accepted industry standards; and

f. Otherwise performing defective Modification Work.

81.     As a direct and proximate result of TRI's breach of the implied warranty obligations pertaining to the Modification Work, Crown has and/or will incur:

a. Substantial investigation costs to ascertain the extent to which the Modification Work is defective and/or fail to comply with the TRI Agreements, Crown/TRI Purchase Orders, the design specifications and/or generally accepted industry standards, and analyze appropriate corrective measures;

b. Substantial costs to remedy the defective Modification Work; and

c. The loss of the benefit of its bargain.

WHEREFORE, Crown respectfully requests this Honorable Court to enter judgment in its favor and against TRI in an amount in excess of $75,000, plus costs,

attorneys fees, interest and such other relief as this Court deem just and proper.

JURY TRIAL DEMANDED.

## COUNT IV – BREACH OF CONTRACT
## CROWN v. VSI

82.     Crown hereby incorporates by reference all preceding paragraphs as though they were set forth more fully at length herein.

83.     Pursuant to the VSI Agreement, VSI agreed to perform for Crown certain engineering work, which included various aspects of modification design, fabrication, construction, and/or installation.

84.     For all work performed pursuant to the VSI Agreement, VSI agreed to design, fabricate, construct and/or install modifications, among other things, in accordance with the modification design documents and generally accepted industry standards.

85.     Specifically, VSI agreed to provide Crown work to be performed "in a first manner" and "in conformity with the standards and practice … in the wireless communications industry."  See Section 7(A) of VSI Agreement, Exhibit "C".

86.     Upon information and belief, VSI designed the modifications subject to the Modification Work at approximately two hundred and thirty three (233) of the Sites purportedly pursuant to the VSI Agreement, Crown/VSI Purchase Orders and/or TRI/VSI Purchase Orders.

87.     VSI breached the VSI Agreement, the Crown/VSI Purchase Orders, the TRI/VSI Purchase Orders, and/or the specifications on the modification design documents by, among other things:

a. Failing to design, fabricate, construct and/or install the modifications in accordance with the VSI Agreement and/or the modification design specifications and generally accepted industry standards as described in detail above;

b. Failing to design, fabricate, construct and/or install modifications that would be suitable to accommodate the number of carriers intended, which intended use was known to VSI;

c. Failing to design fabricate, construct and/or install modifications that complied with the tower loading specifications and generally accepted industry standards; and

d. Performing Modification Work that created an overstressed condition at the monopole anchor, bar splice jumps, flange jumps, anchor assemblies and flange jumps, anchor welds, and stiffener/bar welds; and

e. Otherwise performing defective Modification Work.

88.     As a direct and proximate result of VSI's breach of the VSI Agreement, Crown/VSI Purchase Orders, TRI/VSI Purchase Orders and/or the terms specified on the modification design documents, Crown has and/or will incur:

a. Substantial investigation costs to ascertain the extent to which the Modification Work is defective and/or fail to comply with the VSI Agreement, the design specifications and/or generally accepted industry standards, and analyze appropriate corrective measures;

b. Substantial costs to remedy the defective Modification Work; and

c. The loss of the benefit of its bargain.

89.     Section 8(A) of the VSI Agreement requires VSI, among other things, to pay Crown "all costs and expenses (including reasonable attorneys' fees, investigation and remediation expenses)" incurred in a suit filed to enforce the terms of the VSI Agreement.  See Exhibit "C".

90.     Further, Section 8(A) of the VSI Agreement further requires VSI, among other things, to pay Crown for all of the expenses related to defective material and/or work due to the fault of VSI or its "Lower Tier Contractors", i.e. subcontractors.  See Exhibit "C".

WHEREFORE, Crown respectfully requests this Honorable Court to enter judgment in its favor and against VS in an amount in excess of $75,000, plus costs, attorneys fees, interest and such other relief as this Court deem just and proper.

JURY TRIAL DEMANDED.

<u>COUNT V – BREACH OF EXPRESS WARRANTY</u>
<u>CROWN v. VSI</u>

91.     Crown hereby incorporates by reference all preceding paragraphs as though they were set forth more fully at length herein.

92.     Pursuant to Section 7 of the VSI Agreement, VSI expressly warranted that its portions of the Modification Work shall be "performed in a first class manner in conformity with the standards and practice applicable to … the wireless communications industry."  See Exhibit "C".

93.     VSI's design, fabrication, construction, and/or installation services related to the Modification Work at issue were not free from defects in design, material and workmanship.  Moreover, said Modification Work was not performed in a first class, workmanlike manner, also failing in many respects to meet generally accepted industry

standards.

94.    VSI breached the express warranty contained in Section 7 of the VSI

Agreement by, among other things:

    a.  Failing to design, fabricate, construct and/or install the modifications in accordance with the VSI Agreement, Crown/VSI Purchase Orders, TRI/VSI Purchase Orders and/or the modification design specifications and generally accepted industry standards as described in detail above;

    b.  Failing to design, fabricate, construct and/or install modifications that would be suitable to accommodate the number of carriers intended, which intended use was known to VSI;

    c.  Failing to design fabricate, construct and/or install modifications that complied with the tower loading specifications and generally accepted industry standards; and

    d.  Performing Modification Work that created an overstressed condition at the monopole anchor, bar splice jumps, flange jumps, anchor assemblies and flange jumps, anchor welds, and stiffener/bar welds; and

    e.  Otherwise performing defective Modification Work.

95.    As a direct and proximate result of VSI's breach of the VSI Agreement,

Crown/VSI Purchase Orders, TRI/VSI Purchase Orders, and/or the terms specified on the

modification design documents, Crown has and/or will incur:

    a.  Substantial investigation costs to ascertain the extent to which the Modification Work is defective and/or fail to comply with the VSI Agreement, the design specifications and/or generally accepted industry

standards, and analyze appropriate corrective measures;

b.   Substantial costs to remedy the defective Modification Work; and

c.   The loss of the benefit of its bargain.

WHEREFORE, Crown respectfully requests this Honorable Court to enter judgment in its favor and against VSI in an amount in excess of $75,000, plus costs, attorneys fees, interest and such other relief as this Court deem just and proper.

JURY TRIAL DEMANDED.

## COUNT VI – BREACH OF IMPLIED WARRANTY
## CROWN V. VSI

96.      Crown hereby incorporates by reference all preceding paragraphs as though they were set forth more fully at length herein.

97.      VSI had an implied warranty obligation to perform the Modification Work in accordance with generally accepted industry standards and in a reasonably workmanlike manner such that the modifications would be fit for their intended purpose, of which purpose VSI was aware.

98.      VSI's implied warranty obligation included an obligation to perform the Modification Work such that the modifications would not cause failures in structural analysis testing, and that when designed, constructed, and installed, they could accommodate installation of the number of carriers' antennas intended

99.      VSI's implied warranty obligation included an obligation to perform the Modification Work in accordance with the design specifications to ensure that the modifications would not cause failed structural analysis testing, would not cause overstress, and would allow the monopoles at the Sites to have the capacity to support the stated design loads.

100.     VSI failed to perform the Modification Work in accordance with generally accepted industry standards and in a reasonably workmanlike manner and so that the modifications would be fit for their intended purpose, of which purpose VSI was aware, by among other things:

   a.   Failing to design, fabricate, construct and/or install the modifications in accordance with the VSI Agreement, Crown/VSI Purchase Orders, TRI/VSI Purchase Orders and/or the modification design specifications and generally accepted industry standards as described in detail above;

   b.   Failing to design, fabricate, construct and/or install modifications that would be suitable to accommodate the number of carriers intended, which intended use was known to VSI;

   c.   Failing to design fabricate, construct and/or install modifications that complied with the tower loading specifications and generally accepted industry standards; and

   d.   Performing Modification Work that created an overstressed condition at the monopole anchor, bar splice jumps, flange jumps, anchor assemblies and flange jumps, anchor welds, and stiffener/bar welds; and

   e.   Otherwise performing defective Modification Work.

101.     As a direct and proximate result of VSI's breach of the implied warranty obligations pertaining to the Modification Work, Crown has and/or will incur:

   a.   Substantial investigation costs to ascertain the extent to which the Modification Work is defective and/or fail to comply with the VSI Agreement, the design specifications and/or generally accepted industry

standards, and analyze appropriate corrective measures;

b. Substantial costs to remedy the defective Modification Work; and

c. The loss of the benefit of its bargain.

WHEREFORE, Crown respectfully requests this Honorable Court to enter judgment in its favor and against VSI in an amount in excess of $75,000, plus costs, attorneys fees, interest and such other relief as this Court deem just and proper.

JURY TRIAL DEMANDED.

## COUNT VII – BREACH OF CONTRACT – THIRD PARTY BENEFICIARY CROWN V. VSI

102.    Crown hereby incorporates by reference all preceding paragraphs as though they were set forth more fully at length herein.

103.    Crown is a third party beneficiary under the TRI/VSI Purchase Orders and/or any other agreements between TRI and VSI relating to the Modification Work as both TRI and VSI intended Crown to benefit from said agreements.

104.    Upon information and belief, TRI subcontracted design portions of the Modification Work to VSI with the knowledge and intent to ultimately benefit Crown and specifically, Crown's Sites at issue.

105.    Upon information and belief, VSI agreed to perform said design work with the knowledge and intent that said work would ultimately benefit Crown.

106.    Upon information and belief, VSI and TRI expressed their intentions for the VSI work, including but not limited to the Modification Work at issue, to ultimately benefit Crown.

107.    Moreover, VSI expressly promised Crown that it would provide work to ultimately benefit Crown, even if through a Crown subcontractor.

108.    More specifically, VSI expressly promised Crown that it would provide work including but not limited to "Drawings and Designs **used by Crown and or its subcontractors** for zoning, building … and for the installation/de-installation of equipment on a Crown asset', as well as "drawings and design **used by Crown and or its subcontractors** for Tower modification and reinforcement". (See Page 1 of Exhibit "C", emphasis added).

109.    TRI and VSI's express statements, the express terms of the Crown/VSI Agreement, Crown/VSI Purchase Orders and the terms of the VSI/TRI Purchase Orders create an obligation for VSI to perform Modification Work free from defects on behalf of Crown as a third party beneficiary.

110.    Crown relied on the express statements of TRI and VSI when it made the decision to engage TRI and VSI to perform the Modification Work and to continue with providing the Modification Work over time.

111.    As a direct and proximate result of VSI's breach of its duties to Crown as a third party beneficiary pertaining to the Modification Work, Crown has and/or will incur:

    a. Substantial investigation costs to ascertain the extent to which the Modification Work is defective and/or fail to comply with the VSI Agreement, Crown/VSI Purchase Orders, TRI/VSI Purchase Orders, the design specifications and/or generally accepted industry standards, and analyze appropriate corrective measures;

    b. Substantial costs to remedy the defective Modification Work; and

    c. The loss of the benefit of its bargain.

WHEREFORE, Crown respectfully requests this Honorable Court to enter

judgment in its favor and against TRI in an amount in excess of $75,000, plus costs, attorneys fees, interest and such other relief as this Court deem just and proper.

JURY TRIAL DEMANDED.

## COUNT VIII – PROFESSIONAL NEGLIGENCE
## CROWN V. TRI & VSI

112.     Crown hereby incorporates by reference all preceding paragraphs as though they were set forth more fully at length herein.

113.     TRI and VSI were obligated to provide professional engineering, design, construction, installation and/or general contractor services to Crown under the TRI Agreements, the VSI Agreement, their respective purchase orders, any other applicable agreement amongst the parties, and in accordance with generally accepted professional industry standards.  For the reasons described herein, they breached that duty.

114.     TRI and VSI owed Crown a professional duty to utilize their professional skill, knowledge and/or expertise, in accordance with applicable generally accepted professional industry standards, while performing the Modification Work described herein.

115.     TRI and VSI failed to exercise the requisite professional skill, knowledge and/or expertise in performing their obligations under the TRI Agreements, VSI Agreement, Crown/TRI Purchase Orders, Crown/VSI Purchase Orders, TRI/VSI Purchase Orders and/or any other applicable agreement amongst the parties.  TRI and VSI breached their professional duty of care by, among other things:

   a. Failing to design, fabricate, construct, and/or install the modifications in accordance with the TRI Agreements VSI Agreement, Crown/TRI Purchase Orders, Crown/VSI Purchase Orders, TRI/VSI Purchase Orders and/or the modification design specifications and generally accepted

industry standards as described in detail above;

b. Failing to design, fabricate, construct and/or install modifications that would be suitable to accommodate the number of carriers intended, which intended use was known to TRI and VSI;

c. Failing to design fabricate, construct and/or install modifications that complied with the tower loading specifications and generally accepted industry standards;

d. Performing Modification Work that created an overstressed condition at the monopole anchor, bar splice jumps, flange jumps, anchor assemblies and flange jumps, anchor welds, and stiffener/bar welds;

e. As general contractor, failing to ensure that all portions of the Modification Work were done so free of defects, in accordance with the modification specifications and/or within general accepted industry standards; and

f. Otherwise performing defective Modification Work.

116.    As a direct and proximate result of TRI and VSI's failure to exercise the requisite professional skill, knowledge and/or expertise in performing its obligations under the TRI Agreements, VSI Agreement, Crown/TRI Purchase Orders, Crown/VSI Purchase Orders, TRI/VSI Purchase Orders, and the specifications on the modification design and/or construction documents, Crown has and/or will incur:

a. Substantial investigation costs to ascertain the extent to which the Modification Work is defective and/or fail to comply with the TRI Agreements, the design specifications and/or generally accepted industry standards, and analyze appropriate corrective measures;

b.   Substantial costs to remedy the defective Modification Work; and

c.   The loss of the benefit of its bargain.

WHEREFORE, Crown respectfully requests this Honorable Court to enter judgment in its favor and against TRI in an amount in excess of $75,000, plus costs, attorneys fees, interest and such other relief as this Court deem just and proper.

JURY TRIAL DEMANDED.

Respectfully submitted,

CROWN CASTLE USA INC.

By:____/s/ Amy N. Williamson_____

Amy N. Williamson

2000 Corporate Drive
Canonsburg, PA 15317
(724) 416-2526
(724) 416-4526 (Fax)

Counsel for Plaintiffs

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

**COMPLAINT** was served by CM/ECF, this 8<u>th</u> day of <u>June</u>, 2010, on the following:


Tower Reinforcement, Inc.
C/o Michael Kopshever, Owner/President
2301 W. Michigan
Suite 1
Evansville, IN 47712

Vertical Solutions, Inc.
C/o Michael L. Lassiter, President
354-B Raleigh St.
Holly Springs, NC 27540

Vertical Solutions, Inc.
C/o Michael L. Lassiter, President
PO Box 579
Holly Springs, NC 27540



CROWN CASTLE USA INC.


By:___/s/ Amy N. Williamson_____
        Amy N. Williamson

        2000 Corporate Drive
        Canonsburg, PA 15317
        (724) 416-2526
        (724) 416-4526 (Fax)

        Counsel for Plaintiffs