**EXHIBIT "A"**

Vendor No. <u>216909</u>

Master Agreement No. <u>216909G</u>

**THIS GENERAL CONSTRUCTION SERVICES MASTER AGREEMENT** is made as of this <u>7</u>ᵗʰ day of
<u>February</u>, 2005 between Crown Castle USA Inc., for itself and its affiliates, (collectively, "Crown"), and
**Tower Reinforcement, Inc., an Indiana corporation** having a principal location at **2301 W. Michigan Avenue,
Suite I, Evansville, IN 47712** ("Contractor").

Crown desires to engage Contractor to perform certain construction services for Crown and Contractor desires
to perform such services as Crown may from time to time require. Such services may include; **ELEVATED
WORK (TOWER ERECTION, TOWER LIGHTING, TOWER PAINTING, INSTALLING ANTENNA HARDWARE
INCLUDING FRAMES, MOUNTS, COAX, FASTENERS, CUSTOMER ANTENNA INSTALLATION, AND
SWEEP TESTS), DEMOLITION, ACCESS ROAD, CIVIL WORK (CLEAR, GRUB, GRADE, STONE &
MATTING), FENCE & GATE, GENERATOR/FUEL PAD FOUNDATION, GROUNDING/MEGGAR TESTS, ICE
BRIDGE, CRANE SETTING OF EQUIPMENT AND SHELTERS, SET GENERATOR/FUEL TANK,
SHELTER/EQUIPMENT FOUNDATIONS, SHELTER/ROOM BUILD OUT, TELCO/ELECTRICAL WORK,
TOWER FOUNDATIONS, UTILITIES (PVC CONDUIT INSTALL), UTILITY CENTER (METERBOARD WITH
ELECTRICAL EQUIPMENT), PROJECT/CONSTRUCTION MANAGEMENT, GROUND LEVEL
MAINTENANCE (HVAC, GENERATORS, GENERAL CARPENTRY, PAINTING, BUILDING AND FENCE
REPAIR), LANDSCAPING AND GROUNDS CARE (SNOW PLOWING, LAWN CARE).** The specific services
which Contractor may be engaged to provide, if any, will be described in one or more Project Appendices (as
defined below), executed and delivered by the parties. Contractor may perform such services directly for Crown
or as a subcontractor of Crown for the ultimate benefit of a third party. The parties desire to embody in one
agreement the basic terms and conditions under which Crown will engage Contractor and Contractor will
provide services to Crown.

☒    **APPROVED FOR ELEVATED WORK**

☐    **NON-ELEVATED WORK ONLY (notwithstanding anything herein to the contrary)**

☒    **BUILDER'S RISK INSURANCE REQUIRED**

Notwithstanding the categories of work that Contractor indicated that it desired to perform when it returned
Crown's Vendor Qualification Questionnaire, Contractor is approved for, and limited to perform of, **only** the
above-identified categories of Work with noted restrictions. No Crown person is authorized to award any work to
Contractor that is outside the above categories and restrictions, and Contractor is obligated to promptly notify
Crown's Area Vice President Program Management if any Crown Purchase Order issued to them exceeds the
types of work for which Contractor has been approved to perform hereunder. Moreover, Contractor understands
and acknowledges that it is not entitled to any reimbursement from Crown for work it may perform that does not
fall within the above categories or restrictions, and Contractor shall indemnify and hold Crown harmless for any
and all claims arising from its performance of such non-permissible work.

1.    **DEFINITIONS**

      As used in this Agreement, the following capitalized terms have the respective meanings ascribed to them
      below:

      **"Accident"** means any incident involving injury to any person requiring immediate attention by a medical
      professional and/or involving damage to property.

      **"Agreement"** means this Master General Construction Services Agreement, together with the following
      Attachments and Exhibits attached hereto and incorporated by reference herein:

|  |  |
|---|---|
| Exhibit A | Contractor Invoicing Requirements |
| Exhibit B-1 | Contractor Partial Release and Waiver of Liens |
| Attachment 1 to B-1 | Contractor's Lower Tier Contractor Listing |
| Exhibit B-2 | Contractor's Lower Tier Contractor Release and Waiver of Liens |
| Exhibit C | Form of Change Order |
| Exhibit D | Elevated Work Certificate |

Exhibit E                 Insurance Requirements

**"Change"** means any addition or alternative to, or deductions or deviations from, or substitution in the Work to be performed pursuant to this Agreement and the Contract Documents.

**"Change Order"** means a written directive issued by Crown pursuant to which Contractor shall implement a Change, as provided in Section 8 of this Agreement.

**"Confidential Information"** means information, including, but not limited to, information regarding Crown assets, liabilities, operations, financial conditions, employees, plans, prospects, management, investors, products, strategies and techniques, the technical characteristics and operations of Crown products, and the identity of suppliers and customers and the nature and extent of Crown's business relationships with such parties.

**"Contract Documents"** means this Agreement, together with any Project Appendices, attachments, drawings, specifications, instructions, Purchase Orders, or other documents issued by Crown or incorporated by reference in connection with a Project.

**"Disclosing Party"** means the party, which discloses Confidential Information.

**"Elevated Work"** means any work over six feet (6') above ground level, including but not limited to any means of elevating personnel above the ground, and any tower climbing and tower antenna installation activities on towers.

**"Final Completion"** of a particular Project shall be deemed to have occurred when: Contractor has performed all of the Work required by the applicable Contract Documents; a Certificate of Occupancy or similar document shall have been issued by the appropriate governmental body, if required; Crown and/or Crown's customer shall have inspected the Work and determined the same to have been satisfactorily completed (including all punch list items, if any) in accordance with the applicable Contract Documents; Contractor shall have completed transmittal of all documentation required for closeout, as directed by Crown's Project Manager;   and Crown shall have issued its certificate of final acceptance.   Final Completion shall occur and be determined on a site-by-site basis.

**"Lower Tier Contractor"** means any service provider, person, company, materialmen, or entity with which Contractor shall have entered into an agreement to provide services or materials in connection with any Project.

**"Project"** means Work to be performed by Contractor on a site or group of sites, or some other form of Work awarded by Crown to Contractor, as described in a Project Appendix and as may be more specifically identified in one or more Purchase Orders.

**"Project Appendix"** means a supplement to this Agreement, which describes the specific Work on a Project, which may be performed by Contractor, as more fully described in Section 2 of this Agreement.

**"Purchase Order"** means a written instrument issued by Crown pursuant to a Project Appendix and this Agreement, which authorizes Contractor to proceed with Work on a specific site or group of sites.

**"Receiving Party"** means the party to which Confidential Information is disclosed.

**"Work"** means the tasks, collectively, which Contractor is engaged by Crown to perform, pursuant to and as described in the Contract Documents.

2.   **PROJECTS AND WORK**

A.   This Agreement is entered into with no guaranteed quantity or value of Work to be awarded to Contractor.  Crown shall have no obligation to Contractor, and Contractor shall have no obligation to Crown, unless and until a Purchase Order is issued by Crown to Contractor.  A Purchase Order may set forth more specific terms and conditions, in addition to those set forth in this Agreement, including the specific scope of work, schedule, payment schedule, invoicing requirements and any other obligations from Crown's contract with its customer which must be assumed or adopted by Contractor with respect to a particular Project.  In the event that Contractor should commence Work

before its receipt of a Purchase Order and notice to proceed signed by Crown and accepted by Contractor ("NTP"), Crown shall have no obligation to pay for such Work.

B.    From time to time after the parties have executed and delivered this Agreement, the parties may agree upon, execute and deliver one or more Project Appendices which describe in detail specific Projects which may be undertaken by Contractor, including the materials and services required, the schedule, payment terms, invoicing requirements and any other or additional terms and conditions applicable to each such Project. Each such Project Appendix shall be governed by the terms and conditions of this Agreement. The execution and delivery by the parties of a Project Appendix is no guarantee of Work to be awarded to Contractor, nor shall a Project Appendix be deemed to be an authorization for Contractor to commence any Work.

C.    In the event of a conflict between the terms of this Agreement and a Project Appendix, the terms of the Project Appendix shall control.

D.    This Agreement is not exclusive and Crown may, in its sole discretion, choose to obtain from other contractors or itself perform the same or similar services as those provided by Contractor.

E.    Contractor shall provide and pay for all labor, materials, construction surveys and layout, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation and other facilities and services necessary for the proper execution and completion of the Work, whether temporary or permanent, and whether or not incorporated or to be incorporated into the Work.

3.    PRICING, PAYMENT, AND LIEN WAIVERS

A.    The amount to be paid by Crown to Contractor for performing the Work may be set forth in the applicable Project Appendix and shall definitely be set forth in, or determined pursuant to the applicable Purchase Order.

B.    Except as otherwise provided in the applicable Project Appendix, Contractor shall submit to Crown an invoice for the Work after its Final Completion. Alternatively, if the applicable Project Appendix so provides, Contractor shall submit invoices based on milestones set forth in the applicable Project Appendix, for Work completed and inspected and accepted by Crown, in amounts determined in accordance with the applicable Purchase Order. Such invoices shall include all requirements stated on the form attached to this Agreement as **Exhibit A** and must contain a list of all Lower Tier Contractors that performed Work pursuant to an invoice and the value of their Work performed by each such Lower Tier Contractor, together with the address, telephone number and contact person of each. Unless otherwise provided in the applicable Project Appendix or as required by the state where the Project is located, Crown shall retain an amount equal to fifteen percent (15%) of the amount of each invoice, which retainage shall be paid to Contractor upon Final Completion. Progress payments made by Crown to Contractor shall not be deemed to constitute acceptance by Crown of the Work.

C.    Contractor and its Lower Tier Contractors shall not make, file or maintain a mechanic's or other lien or claim of any kind or character whatsoever against any tower, building or other structure to which the Work relates, the additions, improvements, alterations, or repairs made thereon, the ground on which said tower, building or other structure is situated, or any other property or property interest owned, held, occupied or otherwise possessed by Crown, Crown's customer, or the landowner for or on account of any labor, materials, fixtures, tools, machinery, equipment or any other things furnished, or any other work done or performance given under, arising out of, or in any manner connected with the Work, or any agreement supplemental thereto (such liens or claims hereinafter referred to as "Claims"). Contractor shall save and hold Crown, Crown's customer and the landowner harmless from and against any and all Claims that may be filed by Contractor's Lower Tier Contractors, and Contractor shall, at its own expense, defend any and all actions based upon such Claims and shall pay all charges of attorneys, bonding, experts or Lower Tier Contractors and all costs and other expenses arising therefrom. If Contractor fails to conform to the foregoing obligations, Crown shall have the right to retain counsel to represent or assist Crown to extinguish all Claims, and to offset all such cost and expense against retainage or any future payments, which may become due from Crown to Contractor. The foregoing covenant of Contractor is independent of any other covenant of Contractor contained in this Agreement and shall survive the expiration or termination of this Agreement.

D.   Crown requires that Contractor's invoices be accompanied by a waiver of liens from Contractor and also from Contractor's Lower Tier Contractors, in substantially the form attached to this Agreement as **Exhibit B-1, Attachment 1 to Exhibit B-1, and Exhibit B-2** (or in a similar format as may be required in the state where the Project is located and/or as approved by Crown), properly completed by the appropriate parties to cover the amount and date of payment to such party as reflected in the invoice. Without limiting the generality of the foregoing, as a condition precedent to the payment of **each and every invoice,** including for final retainage release, Contractor shall provide to Crown release and waiver of liens (Exhibit B-1, Attachment 1 to Exhibit B-1, and Exhibit B-2) properly executed **BY CONTRACTOR AND ITS LOWER TIER CONTRACTORS** whose services make up a part of such invoice.

E.   Acceptance by Contractor of final payment from Crown shall constitute a release and waiver of any and all claims by Contractor against Crown, except for unsettled claims which have been presented to Crown in writing prior to the tender of final payment by Crown and which are identified in the final lien waiver.

F.   If Crown becomes aware that Contractor has failed to make payments to any of its Lower Tier Contractors, or in the event that a claim is made against Crown or Crown's customer by a Lower Tier Contractor, Crown shall have the right to: (i) retain, out of payments due or to become due to Contractor, reasonable amounts necessary to satisfy any such payments and any claim, bond or lien against Crown, its customer, the landowner, or their property; or (ii) issue checks jointly payable to Contractor and any such Lower Tier Contractor; or (iii) directly pay the Lower Tier Contractor deduct the amount of such payment from any amount owing to Contractor.

G.   Payments otherwise due to Contractor may be withheld by Crown on account of defective Work not remedied, claims filed, reasonable evidence indicating probable filing of claims, the failure of Contractor to perform any of its obligations, or to protect Crown against liability arising out of Contractor's failure to pay or discharge taxes or other obligations. The withholding of payment by Crown on any invoice with respect to any particular Project or Projects, or with respect to Work authorized by any particular Purchase Order or Orders, shall not affect the obligation of Contractor to continue to perform Work as required by the Contract Documents on that Project or pursuant to the particular Purchase Order and on any other Project or Projects or pursuant to any other Purchase Orders issued to Contractor. Upon written notice to Contractor, Crown may setoff against amounts owed to Contractor on any particular Project or Purchase Order, amounts claimed by Crown from Contractor on any other Project or Purchase Order.

H.   ~~Contractor shall present invoices to Crown within a reasonable period of time and Crown shall make~~ payment to Contractor within forty-five (45) days after the receipt of a properly prepared invoice. In no event shall Crown be responsible to Contractor for interest or carrying charges on any invoice, and Contractor agrees that it shall not include any such amounts on any of its invoices to Crown. Unless otherwise agreed by Crown, Crown shall not be responsible for the payment of any invoice submitted by Contractor to Crown more than ninety (90) days after completion of the Work, which is the subject of the invoice.

I.   Contractor shall forward its original invoices and any documentation required by this Agreement to accompany any invoice to the Crown office specified in the applicable Project Appendix, with a copy to such other Crown office(s) as may be specified in the applicable Project Appendix.

J.   For Work performed on any cost basis other than firm lump sum, Crown shall have full access during normal working hours to Contractor's priced records, purchase orders, invoices, receipts, and time sheets relating to such Work, in order to verify the cost of the Work and any burdens or overheads and profit relating thereto. Such auditing rights of Crown shall not apply to the breakdown of the agreed upon rates, percentages and mark-ups.

## 4.   TIME AND PROGRESS OF WORK

A.   Time is of the essence for all Work under this Agreement. Contractor agrees to abide by the schedule set forth in the applicable Project Appendix and to commence Work on the date(s) stipulated in the applicable Purchase Order. Contractor shall carry the Work forward expeditiously according to the applicable Work schedule and with adequate forces to achieve completion of the

Work by the date(s) stipulated.  No extension of the time allowed for performance of any Project will be made without the written consent of Crown.

B.  Crown reserves the right to assess liquidated damages for Contractor's failure to complete a Project on schedule where such failure causes Crown to sustain damages which are difficult to assess in advance.  The amount of any such liquidated damages shall be set forth in the applicable Project Appendix.  Contractor shall indemnify and hold Crown harmless from and against any damages, liquidated or otherwise, assessed against Crown for failure to complete the Project on time, to the extent that such failure is caused by the acts, omissions or delays of Contractor or any of its Lower Tier Contractors.

5.  **SPECIFICATIONS AND DRAWINGS**

A.  Contractor shall keep a copy of the specifications and drawings at the Work site at all times.  Anything mentioned in the specifications and not shown on the drawings, or shown in the drawings and not mentioned in the specifications, shall be of like effect as if shown and mentioned in both.  If there is any difference between the drawings and specifications, the specifications shall govern, but the matter shall be immediately submitted to Crown for resolution. Any Work performed without such resolution shall be at Contractor's own risk and expense.  Contractor and Crown shall sign or initial each page of one copy of the specifications and one print of each drawing.  The signed specifications and drawings shall be retained by Crown.

B.  All specifications and drawings and all copies and reproductions thereof are:  (i) the property of Crown and must be delivered to Crown upon request, or at the completion of the Work; (ii) provided to Contractor, its Lower Tier Contractors and material suppliers for the limited purpose of use in completing the Work, and may not be used for any other purpose whatsoever without the prior written consent of Crown; and, (iii) confidential and, except for the purpose specified above, may not be copied, exhibited or furnished to others except as necessary to perform the Work without the prior written consent of Crown, and no photographs may be taken of any article fabricated or assembled from the drawings and/or specifications without the prior written consent of Crown.

C.  Contractor and its Lower Tier Contractors who provide drawings and/or construction services of any sort to Crown or on Crown's behalf under this Agreement, shall do so in complete compliance with the requirements and specifications of Crown's "CCUSA Engineering Standards" or its latest update, if any, a copy of which shall be provided by Crown's respective Area Contract Administrator at the time of execution of this Agreement.  Crown's CAD Standard for drawings and construction services shall be strictly followed, EXCEPT where a Customer's specifications differ in a more stringent manner, as determined and confirmed solely by Crown in the respective Project Appendix.

6.  **MATERIALS**

A.  Crown shall provide only those materials shown on the Crown provided materials list (if any) included in the applicable Contract Documents.  Contractor acknowledges that, depending on the type of Work designated, Crown may or may not provide additional materials for full completion of the Work.  Contractor shall provide all other materials and equipment required for the performance of the Work.

B.  Contractor shall be required to pick up from locations(s) designated by Crown, load, deliver and unload all materials provided by Crown.  Where materials are shipped directly to Contractor, at the Work site or elsewhere at the direction of Crown, Contractor shall receive, unload, verify, inventory and properly store such materials in areas previously approved by Crown.  Contractor shall furnish, in a format acceptable to Crown, a material received report for each shipment or lot of material received.  Contractor will note on the delivery receipt any damages or shortages and immediately notify Crown of any deficiencies or visible defects in workmanship identified at the time of delivery.

C.  Contractor will assume the risk of loss and/or damage for all materials while in the possession of or under the control of Contractor or any Lower Tier Contractor. Contractor must, at its cost, secure all materials in its possession or under its control.

D.  All materials utilized by Contractor and its Lower Tier Contractors in performance of the Work must be approved by Crown prior to purchase or installation. Crown may require Contractor, at its cost, to remove unauthorized products and replace them with approved products.

E.  All manufactured articles, materials and equipment shall be provided new and free of defects, applied, installed, connected, erected, cleaned, conditioned and tested in accordance with the manufacturer's printed directions and specifications and as specified in the applicable Contract Documents. Where the directions and specifications included in the applicable Contract Documents are in conflict with the manufacturer's printed directions and specifications, Contractor shall report such conflicts to Crown for resolution.

F.  For each Project, Contractor shall provide all incidental material, including but not limited to, sand, gravel, top soil, fill materials, crushed stone, sod, straw, mulch, grass seed, fertilizer, concrete, slurry, reinforcing rods, asphalt, clean up materials required for performance of the Work or restoration of disturbed areas and all other materials required by this Agreement to perform the Work and not listed as being provided by Crown. Unless otherwise provided in the Project Appendix, the cost of the materials shall be deemed to be included in the amount authorized by the applicable Purchase Order. Any materials lost, damaged or requiring replacement due to improper installation by Contractor shall be replaced by Contractor at its expense.

G.  Any potentially hazardous or toxic substance, including by way of example and not limitation, chemicals, cleaning fluids, solvents and batteries, shall be used by Contractor only if its use is approved in advance, in writing by Crown, and only if necessary for carrying out the Work to be performed hereunder, and, if essential, such substances, and any containers or materials which come in contact with such substances, shall be managed, used, and disposed of only in accordance with all federal, state, and local laws and regulations. Contractor shall maintain MSDS sheets on the Project site and shall provide copies to Crown upon request.

## 7.  SUBCONTRACTING

A list of Lower Tier Contractors, which Contractor expects to engage on any particular Project, shall be attached to the applicable Project Appendix. All subcontracts and orders for the purchase or rental of supplies, materials or equipment shall require that the Lower Tier Contractor be bound by and subject to all terms and conditions of this Agreement, including the no-lien provisions specified in Article 3. Each subcontract or order shall contain a provision permitting assignment to Crown, or its successors, and assigns, subsidiaries, joint ventures and affiliates. Crown reserves the right to reject or require Contractor to terminate its relationship with any such Lower Tier Contractor in connection with any particular Project or Projects at any time. Crown further reserves the right to require Contractor to terminate any particular work then in progress by any Lower Tier Contractor if Crown's customer so notifies Crown. Contractor's engaging of any Lower Tier Contractor to perform any portion of the Work shall not relieve Contractor of its obligations to Crown pursuant to the Contract Documents. Contractor shall have a competent superintendent, satisfactory to Crown, at the Work site at all times during progress of the Work with the authority to act for Contractor.

## 8.  CHANGES

A.  Without invalidating this Agreement or any other Contract Document or any bond(s) issued hereunder or thereunder, at any time and from time to time during the progress of the Work, Crown may, by written Change Order, specify any change in all or any part of the Work which falls within the general scope of an applicable site and/or Project Appendix. Changes for which a Change Order may be proposed include, but are not limited to, changes in the specifications or materials related to the Work and changes in the scheduling, time, dates, method or manner of performance of the Work. Each Change Order shall be in substantially the form attached to this Agreement as **Exhibit C.** Each Change Order shall describe the Change requested, stating, at minimum, the date of the request for the Change, the proposed effective date of the Change, the Project Appendix applicable to the Work affected by the Change, a description of the Work proposed by the Change and any adjustments to the amount to be paid to Contractor. The applicable Crown Project Manager or someone with higher authority shall sign each such Change Order.

B.  No order, statement, letter, correspondence or conduct of Crown shall be treated as a Change, nor shall the same entitle Contractor to an equitable adjustment in compensation, scheduling or any other matter.

C.  Upon issuance of a Change Order by Crown, Contractor shall promptly proceed with the Work specified therein.  Contractor shall perform such Work in accordance with the provisions of Contract Documents relating to the Work affected by such Change.

D.  Crown may request Contractor to provide price quotations for Changes proposed by Crown.  Such requests for quotations shall not be considered as authorizations to proceed with Changes. Contractor shall submit to Crown, Contractor's response to a request for a price quotation for a proposed Change within five (5) business days after Contractor's receipt of such request. Contractor shall hold any such price quotation open for the period indicated in the request for quotation, or, if no period is indicated in the request, for not less than ninety (90) calendar days.  At such time as Contractor provides any such price quotation to Crown, or if no quotation is required, within five (5) business days after Crown's requesting a Change, Contractor shall provide to Crown a written statement outlining any delays that will occur in Contractor's performance of the Work as the result of such Change.  The parties shall mutually agree upon adjustments to the contract price and/or scheduling for the performance of the Work as changed, to the extent that the applicable Change actually causes an increase in the cost of Contractor's performance or causes a delay or interruption in Contractor's performance of the Work.  Contractor shall have no right to obtain any adjustment to the contract price and/or schedule if Contractor fails to outline the cost increases and/or delays which it expects to incur in its price quotation or, if no price quotation is requested by Crown, within five (5) business days of Crown's requesting the applicable Change.

E.  Adjustments to the contract price resulting from any Change shall be based to the greatest extent possible on the prices set forth in the applicable Purchase Order.  If a proposed Change calls for an increase or decrease of more than twenty-five percent (25%) in the quantity of Work or contract price, then either Crown or Contractor may request a review of the prices set forth in the applicable Purchase Order to determine if new prices thereunder should be mutually determined.

9.  **INSPECTION OF WORK SITE; EXISTING UTILITIES AND SERVICES**

A.  At all times, Crown, Crown's customer and their respective agents, employees and representatives shall have access to the Work or Work site wherever it is being performed, and Contractor shall provide proper facilities for such access and for inspection.

B.  Contractor shall have sole responsibility for satisfying itself concerning the nature and location of the Work.  Contractor's failure to acquaint itself with applicable conditions shall not relieve Contractor of responsibility for properly estimating either the difficulties, time for or the cost of performing the Work.  Prior to the submission of any proposal for Work to be performed under this Agreement, Contractor shall make or shall be deemed to have made a careful examination of the proposed Work site and shall have satisfied itself as to the intent, nature and character of the Project including, but not limited to: location and characteristics of the facilities required as they relate to the proposed Work; local conditions as they may affect delivery and availability of materials and supplies; the availability of local labor and any Work rules relative to the performance of the Work; all laws, codes and right of way and easement agreements which affect the Work in any way; the type and quantity of facilities needed preliminary to and during the execution of the Work; and all other matters that may in any way affect the cost and time required for completion of the Work.  Any difficulties which may be encountered in the execution of the Work and which result from failure of Contractor to make the necessary examination and investigation of the proposed Work site or as a result of its failure to seek clarification of the Contract Documents will not excuse any failure or omission on the part of Contractor to fulfill the requirements of the Contract Documents and shall not be accepted as the basis for any claim whatsoever for extra compensation or extension of the time required for completion of the Work.

C.  Without limiting the generality of the foregoing, Contractor represents and warrants that it is aware of the possible existence of aerial or underground power lines, telephone lines, water lines, sewer lines, cable television facilities, pipelines, structures and other public and private improvements within the Work area or adjacent thereto which may or may not be shown on the drawings.  The fact that any aerial or underground facility is not shown on the drawings shall not relieve Contractor of its

responsibility to ascertain the existence, position and ownership of such structures that may be subject to damage by reason of its operations. Contractor shall take every precaution to preserve and protect any such facilities, structures, and improvements from injury or damage during its Work operations. Prior to commencing Work on any Project, Contractor shall contact all affected utilities and facility owners to arrange for the locating and marking of their installations and facilities as may be necessary or appropriate in connection with the performance of the Work. Contractor shall have the further responsibility of coordinating the Work with that of the utility and other facility owners in such a manner as to avoid any interference with the operation of such utilities and facilities. In any event, the responsibility for determining the actual on-site location of utility lines and services shall rest exclusively with Contractor.

10. **WARRANTY**

A.    Contractor warrants to Crown that all Work to be performed under the Contract Documents shall be performed in a first class, workmanlike manner in conformity with the highest standards applicable to such Work in the wireless communications contracting industry and shall comply fully in all respects with all requirements of the Contract Documents, including, without limitation, any specifications, drawings and samples included in the Contract Documents and any performance requirements specified therein. Contractor warrants to Crown that material furnished pursuant to the Contract Documents will be new and merchantable and of first class quality. Contractor shall not substitute other equipment or materials for any equipment or materials specified in the Contract Documents without the prior written approval of Crown. Contractor warrants to Crown that the Work will be free from defects in design, material and workmanship and will be complete, undamaged and in proper operating condition.

B.    Contractor warrants to Crown that Contractor is technically, financially and legally ready, willing and able to perform the Work and is familiar with and knowledgeable about applicable governmental requirements, industry standards and the operation of wireless telecommunications facilities to the extent necessary to carry out its duties in a professional, complete and competent manner. Contractor further warrants to Crown that Contractor has the requisite personnel, competence, skill and physical resources to perform the Work and that it has and shall maintain the capability, experience, training, registrations, licenses, permits and governmental approvals required to perform the Work.

C.    Crown shall have the right to reject defective materials or workmanship and to require their correction. Rejected workmanship shall be satisfactorily corrected, and rejected materials shall be immediately removed from the Work site, without charge to Crown. If Contractor does not correct such defective workmanship within a reasonable time or remove rejected materials immediately, Crown may correct such defective workmanship or remove such rejected materials and charge the expense to Contractor. Should Crown, at any time before final acceptance of the entire Work, desire to make an examination of any items of Work already completed, Contractor shall, upon request, promptly furnish all necessary facilities, labor and materials therefor. If such items of Work are found to be defective in any material respect due to the fault of Contractor or its Lower Tier Contractors, Contractor shall pay for all of the expenses of such examination, any demolition and any satisfactory reconstruction.

D.    Neither the failure of Crown to exercise the right of inspection, nor the failure to discover defective workmanship or material during such inspection, shall relieve Contractor of its obligation to provide material and workmanship strictly in accordance with the specifications.

E.    Contractor warrants to Crown that the use of the Work or any part thereof for the purposes for which such Work was designed and the performance by Contractor under the Contract Documents will not infringe on any United States patent or other intellectual property right.

F.    The above warranties shall continue for the longer of: (i) one (1) year after Final Completion; or (ii) such greater period as may be specified in the applicable Contract Documents. If material furnished by Contractor pursuant to this Agreement is covered by a manufacturer's warranty, Contractor hereby assigns such warranty to Crown and Crown's customer. All warranties shall survive inspection, acceptance and payment and shall apply to repaired or replaced material and services, with the applicable warranty period commencing on the date of completion of such repair or replacement in such event.

G.   If, within one (1) year from Final Completion and, with respect to repairs of defective work performed by contractor within one (1) year from completion of said repairs (or within any longer warranty period prescribed by the applicable Contract Documents), any defect in materials or services provided by Contractor pursuant to this Agreement is discovered, then, upon receipt of notice of such defect, Contractor shall cause such defect to be repaired or remedied at Contractor's sole cost and expense. Contractor shall commence or cause the commencement of repairs immediately upon receipt of notice from Crown and thereafter diligently pursue same to completion. Crown shall have the right without prejudice to any other rights or remedies available to it; (i) to make such repairs and offset the cost thereof against any amounts owed by Crown to Contractor, or invoice Contractor therefor; or (ii) require Contractor to refund the price of the Work that is found to be defective.

## 11.   INDEMNIFICATION

Contractor shall indemnify, defend and hold harmless Crown, Crown's customers and their respective affiliates, customers, employees, officers, directors, agents, successors and assigns from and against any and all suits, actions, proceedings, losses, damages, claims, fines, penalties, costs and expenses (including reasonable attorneys' fees, investigation and remediation expenses) arising out of or resulting from: (i) injuries to or death of any persons (including employees of Contractor and any Lower Tier Contractor) or damage to property, including theft, in any way arising out of or caused by the Work performed or material provided by Contractor or any Lower Tier Contractor; (ii) any failure of Contractor to perform its obligations under any Contract Document or breach by Contractor of any representation, warranty, covenant or agreement contained in any Contract Document; (iii) any release of hazardous substances, pollutants or contaminants caused or exacerbated by the acts or omissions of Contractor or any Lower Tier Contractor; (iv) any violation of any law or other governmental requirement by Contractor or any Lower Tier Contractor; and (v) any infringement of any United States or other patent right by any portion of the Work performed by the Contractor or any Lower Tier Contractor. Under no circumstances, whether arising in contract, equity, tort (including negligence) or otherwise, shall either party be liable to the other for any special, indirect, incidental, or consequential damages.

## 12.   SAFETY AND HEALTH

A.   Contractor shall be solely responsible for the conduct, safety and health of its employees and agents and those of its Lower Tier Contractors, as well as the public, in connection with the Work. Without limiting the generality of the foregoing, Contractor shall comply with all federal, state and local laws, ordinances, rules, regulations and orders concerning the safety and health of workers and the public, including, without limitation, the Occupational Safety and Health Act of 1970 ("OSHA") and any similar state statutes. Contractor shall develop, implement, maintain and enforce a safety program for the protection of persons and the Work and will provide the same to Crown upon request.

B.   At all times, Contractor shall enforce strict discipline and good order among its employees and Lower Tier Contractors, and shall not employ on the Work or Work site any unfit person or anyone not skilled in the task assigned. No dogs, fires or alcohol are permitted on any Project site at any time.

C.   Contractor, at its sole cost and expense, shall at all times keep the Work site and adjoining premises and access roads clean of rubbish caused by Contractor's operations and, at the completion of the Work, shall remove all rubbish and all of its tools, equipment, temporary work and surplus materials and shall leave the Work site clean and ready for use. If Contractor does not perform such cleaning immediately upon request, Crown may cause such cleaning to be done by others and may charge to and/or withhold from Contractor the expense such cleaning.

D.   By written notice to Contractor, Crown may immediately suspend all Work by Contractor and its Lower Tier Contractors, either at the specific site involved in an Accident or at any and/or all sites at which Contractor may be performing Work for Crown, upon the occurrence of any of the following:

i.   while performing Work for Crown at a Crown owned or managed site, one or more of Contractor's employees (or persons under the Contractor's supervision) has a fatal Accident and the incident results in a citation for a willful or serious OSHA violation;

ii.   while performing Work for Crown or at a Crown owned or managed site, two or more Accidents occur where one or more employees of the Contractor (or persons under Contractor's supervision) have been seriously injured and the incidents have resulted in

citations for willful and/or serious OSHA violations.  For purposes of this provision, an injury will be considered serious if it results in hospitalization of the person for three (3) or more days;

    **iii.**    Contractor receives more than one notice of failure to utilize fall arrest systems under Crown's Elevated Work policy; or

    **iv.**    Contractor is removed from Crown's qualified vendor list for any reason.

    **v.**    If Crown suspends Work by Contractor for any of the reasons set forth in this **Section 12.D**, Work shall not resume until a written notice to proceed is given by Crown.

**E.**    Contractor shall notify Crown's Regional Program Manager and provide an accident report within twelve hours of an Accident.  Failure to notify Crown or provide said accident report shall, at Crown's option, result in termination of all contracts with Crown and removal of Contractor from the Crown qualified vendor list. The accident report must include at least the following information:

    **i.**    Name of Contractor and all Lower Tier Contractors involved
    **ii.**    Contact name and telephone number for additional information
    **iii.**    Name of Accident victim
    **iv.**    Name of employer of Accident victim if not Contractor
    **v.**    Location, date and time of the Accident
    **vi.**    Description of Elevated Work involved, if any, and the Accident
    **vii.**    Known causal factors
    **viii.**    Condition of the Accident victim
    **ix.**    Healthcare facility and status of victim's treatment, if applicable and known
    **x.**    Police and EMS accident reports
    **xi.**    Contractor's plan to ensure similar accidents will not occur in the future
    **xii.**    Description of damaged equipment or property (if any)

**F.**    Promptly after the occurrence of an Accident, Contractor shall provide the following to Crown, in addition to the accident report;

    **i.**    OSHA's accident report
    **ii.**    Any local or state governmental agency report related to the accident
    **iii.**    OSHA's signed and final decision regarding any regulatory violations
    **iv.**    All witness reports and statements and photographs
    **v.**    A complete, accurate, and up-to-date copy of Contractor's OSHA 200 log for the past thirty-six (36) months
    **vi.**    Contractor's safety policy
    **vii.**    Contractor's training policy
    **viii.**    Any and all other documentation and reports relevant to the accident/incident
    **ix.**    Copy of Contractor's insurance policy

**G.**    **Elevated Work Restrictions**

    **i.**    Contractor represents and warrants that it is fully aware of and knowledgeable about the inherent danger of climbing or working above ground level, especially with regard to tower structures.

    **ii.**    CONTRACTOR WILL ONLY PERMIT THE INDIVIDUALS NAMED IN THE ELEVATED WORK CERTIFICATE ATTACHED HERETO AS **EXHIBIT D** TO PERFORM ELEVATED WORK.

    **iii.**    Contractor shall implement all procedures and take all measures necessary to ensure that none of Contractor's employees or agents or its Lower Tier Contractor's employees or agents, except the individuals listed in the Elevated Work Certificate attached hereto as **Exhibit D** (or persons who are subsequently identified in a signed supplementary Elevated Work Certificate provided to Crown prior to the commencement of any Elevated Work by the individuals named therein), shall perform any Elevated Work. Crown shall have no responsibility

whatsoever to monitor access to Elevated Work by Contractor's or Lower Tier Contractor's employees or agents.

iv. The performance of any Elevated Work by any of Contractor's or its Lower Tier Contractors' employees or agents who are not listed in **Exhibit D** or subsequent Elevated Work Certificates (properly signed and delivered to Crown prior to the performance of said Elevated Work) shall constitute a material breach of all of this Agreement. Upon such material breach Crown shall have the right to immediately terminate this Agreement and all Project Appendices delivered hereunder, and, Contractor shall be liable to Crown for any damages and costs incurred as the result of said termination.

### H.   Radio Frequency Exposure Safety

i. Contractor represents and warrants that it is fully aware of and knowledgeable about the inherent dangers of working on or near tower, rooftop, or other wireless communication sites that are "live", i.e. that are actively receiving and/or transmitting radio signals that may create radio frequency radiation ("RFR") (hereinafter "Live Sites")

ii. Contractor shall not permit any of its employees nor its Lower Tier Contractor's employees to enter a Live Site until and unless they have completed RFR Safety Training in accordance with FCC OET 65, OSHA 1910.97 and OSHA 1910.268 or the most current applicable updates in OSHA regulations (c) guidelines as evidenced by each employee's achieving a passing score ( 79% of answers correct ) on a RF Hazard and Safety Principles test (the "Test") administered by SiteSafe, Inc. of Arlington, VA (703) 276-1100 x206 for a nominal fee (request "Crown Castle Exam—Only Special").

If an employee does not receive a passing score on the Test, he or she may retake it or complete further RF safety training as necessary for the employee to achieve a passing score on the Test.

Contractor shall maintain a record of its employees' (who it proposes have Live Site access) satisfaction of such testing requirement and completion of such training (as applicable) and shall make such record available for Crown's inspection and audit upon request.

iii. Contractor shall implement all procedures and take all measures necessary to ensure that none of Contractor's employees or agents or its Lower Tier Contractor's employees or agents, except those individuals who are RFR Safety Training certified, shall perform any Work on a Live Site. Crown shall have no responsibility whatsoever to monitor access to such Live Sites by Contractor's or Lower Tier Contractor's employees or agents.

iv. The performance of any Work on a Live Site by any of Contractor's or its Lower Tier Contractor's employees or agents who are not RFR Safety Training certified shall constitute a material breach of this Agreement. Upon such material breach, Crown shall have the right to immediately terminate this Agreement and all Project Appendices delivered hereunder, and Contractor shall be liable to Crown for any damages and costs incurred a result of said termination.

## 13.   EXCUSABLE DELAYS

Neither party shall be held responsible for any delay or failure in performance of any part of this Agreement to the extent such failure is caused by fire, flood, explosion, war, strike, embargo, government requirement (except a government requirement which Contractor knows or should have known in the exercise of reasonable diligence), civil or military authority, act of God, power blackout, earthquake, volcanic action, public enemy or other similar causes beyond the reasonable control and ability to foresee and without the fault or negligence of the delayed or non-performing party. Notwithstanding the foregoing, Contractor's liability for loss or damage to Crown's materials in Contractor's control or possession shall not be modified by this provision. In the event of any force majeure condition, the party delayed or unable to perform shall use its best efforts to minimize the delays and costs associated with the force majeure condition and shall immediately give notice to the other party, stating the nature of the force majeure condition and the action being taken to avoid or minimize its effect. In the event of any force majeure

condition, Crown may elect to obtain from third parties or itself perform Work that was to be performed under this Agreement by Contractor or suspend this Agreement and extend the period allowed for Contractor's performance of the Work for a period of time not exceeding the duration of the force majeure condition endured. In the event of any delay, an extension of time shall be the only remedy available to Contractor.

**14.   SUSPENSION**

    **A.**    Crown may at any time suspend Contractor's performance of all or any portion of the Work. Suspension of the Work shall not relieve or release Contractor from the obligation otherwise to perform the Work in accordance with this Agreement. Upon being notified of the suspension, Contractor shall immediately take such steps as may be necessary to protect the Work, materials and equipment and to eliminate, reduce and minimize costs. Contractor shall include in its agreements with Lower Tier Contractors provisions, which permit Crown to suspend the Work pursuant to this Agreement without cost to Crown or Contractor. In the event of suspension, an extension of time shall be the only remedy available to Contractor.

    **B.**    In the event of a fatality, or willful or serious injury (according to OSHA), Crown has the right to immediately suspend, without compensation to the Contractor, all of Contractor's work at all of Crown's jobsites.

**15.   TERMINATION**

    **A.**    If any of the following events occurs and is not cured within five (5) business days after Contractor's receipt of notice of the same from Crown, Crown may, without prejudice to any other right or remedy it may possess, terminate the services of Contractor and take control of the Work and of all materials owned by Crown and may proceed with the completion of the Work as contemplated by the Contract Documents by whatever method deemed expedient by Crown. If such five (5) day period for cure is agreed by Crown to be unreasonable for the circumstances, Contractor shall immediately initiate curative actions and in good faith diligently pursue until the cure is complete.

        **i.**    Contractor, in the reasonable judgment of Crown, fails to supply a sufficient number of skilled workers or suitable materials or equipment for performance of the Work or is otherwise materially behind schedule or fails to perform the Work in a satisfactory and workmanlike manner;

        ~~**ii.**~~    ~~Contractor fails to make payments to any Lower Tier Contractor for labor, material or equipment;~~

        **iii.**    Contractor disregards or fails to comply with laws, ordinances, rules, regulations or orders of any public authority;

        **iv.**    Contractor violates any provision of any Contract Document;

        **v.**    Contractor files a notice of intention to file a mechanic's lien or files a mechanic's lien;

        **vi.**    Any Lower Tier Contractor files a notice of intention to file a mechanic's lien or files a mechanic's lien;

        **vii.**    Contractor fails to provide Crown with original executed copies of full and final release of lien documentation with each invoice submitted for payment;

        **viii**    Contractor fails to provide Crown with a list of all Lower Tier Contractors that will perform Work on each job or project or fails to up date such list in accordance with this Agreement; or

        **ix.**    Contractor is removed from Crown's qualified vendor list for reasons other than those described in **Section 15.B.**

    **B.**    Crown may immediately terminate this Agreement in the event that:

        **i.**    Contractor is removed from Crown's qualified vendor list as the result of safety violations; or

    ii.    Contractor fails to maintain the required levels of insurance coverage or fails to give Crown notice of termination or reduction of insurance coverage. In such event, Crown shall have no further obligation to Contractor, including any obligation to pay Contractor for any Work performed after and including the date such required insurance coverage expired. Contractor, shall at Crown's election, defend, indemnify and hold Crown harmless for Contractor's failure to maintain the required types and amounts of insurance coverage.

**C.**    Crown may immediately terminate this Agreement and/or any services of Contractor in the event of Contractor's gross negligence or willful misconduct or if Contractor breaches any of its obligations pursuant to this Agreement and such breach is of a nature which could create a danger to human health, property or the environment or which could expose Crown to third party liability under any law, rule, regulation or order of any Federal, state or local government or under Crown's contract with its customer. Notice of such termination may be made orally, subject to confirmation in writing as soon as practicable thereafter. In the event of such termination, Contractor shall not be afforded the opportunity to cure the default or defaults which precipitated such termination, and Crown may take control of the Work and of all materials owned by Crown and may proceed with the completion of the Work as contemplated by the Contract Documents by whatever method deemed expedient by Crown. The expense of completing the Work shall be payable by Contractor to Crown.

**D.**    Contractor shall not cause or permit its interest in any Contract Document to pass to any trustee, receiver, custodian or assignee for the benefit of creditors, or otherwise by operation of law. Notwithstanding any other provision of this Agreement, and to the extent permitted by law, this Agreement and all rights of Contractor and those claiming through Contractor under this Agreement or any other Contract Document will automatically cease and terminate, without requirement of notice or opportunity to cure: (i) if Contractor's interest in any Contract Document is taken in execution or by other process of law; (ii) if a proceeding under any arrangement of debt, insolvency, readjustment of debt, or receivership law or statute is filed by Contractor; (iii) if a proceeding under any arrangement of debt, insolvency, readjustment of debt or receivership law or statute is filed against Contractor by a third party and is not dismissed within 60 days; (iv) if Contractor makes an assignment for the benefit of creditors or otherwise ceases to exist; or (v) if Contractor takes any corporate action to authorize any of the actions described in this **Section 15.D**. If this Agreement terminates in accordance with this **Section 15.D**, Crown may, without prejudice to any other right or remedy it may possess, take control of the Work and of all materials owned by Crown and may proceed with the completion of the Work as contemplated by the Contract Documents by whatever method deemed expedient by Crown, and Crown's obligations for payment to Contractor shall be as set forth in **Section 15.E** below.

**E.**    The cost of completion by Crown in the event of a termination based on the occurrence of any of the conditions specified in **Sections 15.A**, **15.B**, **15.C**, or **15.D** above shall be deducted from the unpaid balance, if any, then due Contractor under the Contract Documents, and Contractor shall not thereafter be entitled to recover further payments until the Work shall have been duly performed and accepted by Crown. If the ultimate cost of any completion by Crown is in excess of the unpaid balance, Contractor shall reimburse Crown for the amount of such excess within thirty (30) days of receipt by Contractor of an invoice therefor. In the event Crown terminates this Agreement for cause, Crown shall have no obligation to pay Contractor for Work, which Crown deems unacceptable, late, or not in compliance with the Contract Documents.

**F.**    Crown may terminate this Agreement, or any one or more Project Appendices, at any time, at its discretion and without cause, by written notification to Contractor delivered not less than five (5) days prior to the specified date of termination. Contractor shall, as of the date of termination: (i) terminate all orders in connection with the Work so terminated, to the extent the same can be terminated without cost to Crown or Contractor; (ii) terminate and settle, subject to approval of Crown, other orders and subcontracts where the cost of settlement will be less than costs which would be incurred if such orders and subcontracts were to be completed; and, (iii) if directed by Crown and to the extent stated in the notice of termination, do such Work as may be necessary to preserve the Work in progress. If Crown terminates this Agreement or any one or more Project Appendices pursuant to this **Section 15.F**, Contractor shall be compensated for Work properly performed prior to and in connection with such termination.

G. Upon termination as described in **Sections 15.A, 15.B, 15.C, 15.E or 15.F**, Contractor shall return all work product to Crown promptly upon its receipt of notice of termination.

## 16. INSURANCE

A. During the performance of Work, Contractor, at its sole expense, shall maintain in effect at all times insurance coverage with limits not less than those set forth on **Exhibit E** attached to this Agreement. In addition, Contractor shall require each of its Lower Tier Contractors to carry no less than $1,000,000 general liability coverage and $5,000,000 follow form excess insurance coverage in effect during the course of the Work.

B. Any insured loss or claim of loss against which Crown believes that it has a right to indemnification under this Agreement shall be negotiated by Contractor with full notice to and participation by Crown. Any settlement payments made as a result of such insured loss or claim of loss against which Crown is indemnified hereunder, shall be made payable to Crown. If the parties are unable to agree between themselves on the settlement of the loss, such dispute shall be submitted to a court of competent jurisdiction to determine ownership of the disputed amounts. The Work shall nevertheless progress during any such period of dispute (subject to all other provisions herein) without prejudice to the rights of any party to the dispute. Contractor shall be responsible for any loss within the deductible limit of the policy.

C. The provisions set forth in this Agreement with respect to the types of insurance required, minimum limits and Crown approval requirements are not intended to and shall not in any manner limit or qualify the liabilities and obligations assumed by Contractor under this Agreement.

D. Upon completion and Crown's written acceptance of the Work, Crown shall have title to all completed portions of the Work. Prior to Crown's acceptance of the Work, Contractor shall bear all responsibility for damage or loss to property or Work performed up to the time of such damage or loss, as well as for materials delivered to and stored at the Work site which are intended to become a part of the Work. Contractor shall replace or repair said Work or materials at its own expense to the complete satisfaction of Crown. Contractor shall bear the risk of loss or damage to Contractor's property used in the construction of the Work but which does not become a part thereof.

## 17. LAWS, PERMITS AND TAXES

A. At its expense, Contractor shall comply with and give all notices required by all federal, state and local laws, ordinances, rules, regulations and orders bearing on the performance of the Work. Before starting Work on each Project, Contractor shall ascertain whether the specifications, drawings or other Contract Documents are at variance with any such laws, ordinances, rules, regulations and orders and shall promptly notify Crown of any such variance. Contractor shall have the responsibility to ensure that all of its Work and that of its Lower Tier Contractors comply with said laws, ordinances, rules, regulations and orders.

B. Contractor shall secure all licenses, permits and inspections, pay all related charges and fees and give all notices necessary for the due and lawful prosecution of the Work, except as provided in the following sentence and except as otherwise provided in the applicable Contract Documents. Unless otherwise provided in the applicable Contract Documents, Crown will secure and pay for all right-of-way permits, easements and pole attachment permits required for the placement or relocation of cable, drop wire or permanent structures.

C. Unless otherwise agreed in writing, Contractor shall pay all applicable taxes including, but not limited to sales, use, property and taxes on income, including all penalties and interest thereon.

D. Contractor and its Lower Tier Contractors shall pay all taxes measured by wages, salaries or other remuneration of their employees required by the Federal Insurance Contributory Act as amended, any other applicable Federal laws, or the applicable laws of the state and/or locality in which the Work is performed. Contractor hereby agrees to indemnify and hold Crown harmless from any liability on account of any and all such taxes, liens, duties, assessments, deductions and benefits, in addition to any penalty, interest or other charge that may be levied as a result of Contractor's or any Lower Tier Contractor's late payment, insufficient payment or failure to pay any such taxes.

E.   Contractor and its Lower Tier Contractors shall file such returns, reports or forms necessary for the payment of taxes.

F.   Upon written request, Contractor shall submit to Crown written evidence of any filings or payments of all taxes, including government furnished receipts and detailed documentation by the Federal government or any applicable states. Crown reserves the right to contest, or cause Contractor to contest, any such tax, fee or assessment, and Contractor shall use its best efforts in cooperating with Crown in any such contest.

G.   If provided by Contractor, Contractor shall pay all royalties and license fees in connection with the materials installed and labor performed in conjunction with the Work.

## 18.   BONDS

As specified in a Project Appendix, Crown may require Contractor to furnish performance and payment bonds covering the faithful performance of all or any part of the Work and the payment of all obligations arising as a result thereof. Such bonds shall be issued by a company licensed to do business in the states in which the Work is to be performed and holding a certificate of authority as an acceptable surety on fidelity bonds from all governmental authorities with competent jurisdiction. Such bonds shall remain in full force and effect through the completion of the Work and for one year after Final Completion and shall protect Crown against damages resulting from defects in the Work, improper or incomplete Work or other default in the performance of the Work and default in payment to Lower Tier Contractors. Unless otherwise provided in the Contract Documents, Contractor shall be reimbursed by Crown for the cost of such bonds, at cost.

## 19.   INSPECTION; AUDIT

A.   Contractor shall maintain complete and accurate records of all hours worked and all costs reimbursable by Crown under the Contract Documents. Crown shall have the right to examine and audit such records at all reasonable times. All records shall be kept for a period of one year after Final Completion or until all disputes, if any, between Contractor and Crown have been finally resolved, whichever is later.

B.   All payments made pursuant to this Agreement by Crown shall be subject to final adjustment, as determined by audit performed pursuant to this Agreement.

## 20.   CONFIDENTIALITY

A.   All information, however and whenever acquired, concerning Contractor, Crown and Crown's customers' respective businesses, interests, and activities, including without limitation, all information regarding system designs, system planning, technical data, customer lists, trade secrets, marketing, business plans, personnel, financial reports, forecasts, and internal organization (collectively referred to hereinafter as "Confidential Information") is confidential and proprietary. Each party shall hold Confidential Information received from the other party in strict confidence, shall use such information only for the purpose for which it is disclosed and in accordance with this Agreement, and shall not disclose such information to any third party without the prior express written approval of the Disclosing Party, except that the Receiving Party may disclose Confidential Information to its agents, servants, employees, and Lower Tier Contractors who need to know the Confidential Information to allow the Receiving Party to fulfill its obligations under this Agreement. Contractor hereby agrees that it shall not develop any new techniques or ideas relating to Crown's proprietary or Confidential Information except to improve Contractor's efficiency in performing the Work, and Contractor hereby assigns to Crown any and all right, title and interest Contractor may have in or to any new techniques or ideas relating to Crown's proprietary or Confidential Information that may be developed by Contractor or any Lower Tier Contractor in or as a result of performing the work.

B.   The confidentiality restrictions of this Agreement shall not apply to any information: (i) lawfully received from another source free of restriction and without breach of this Agreement; (ii) that becomes generally available to the public without breach of this Agreement; (iii) known to the Receiving Party at the time of disclosure; or (iv) independently developed by the Receiving Party without reference or resort to the other Party's Confidential Information.

    C.    The obligation to protect the confidentiality of Confidential Information disclosed by either party to the other party shall survive the expiration, termination or assignment of this Agreement for a period of one (1) year.

    D.    Contractor will not disparage Crown or otherwise adversely affect the reputation of Crown or of Crown's customer, nor disclose any Confidential Information to any entity concerning their business affairs.

    E.    Because money damages would not be a sufficient remedy for a breach of this Agreement, Crown shall be entitled to obtain injunctive relief in addition to monetary damages if a breach were to occur.

## 21. PUBLICITY

    A.    Neither party shall publicly advertise or publish Information concerning the entry into, execution of, terms or delivery of this Agreement, including, but not limited to the nature of this Agreement, its terms or conditions, or the terms and conditions of a Contract Document issued hereunder, without the prior written consent of the other party. Neither party will delay or withhold such consent unreasonably.

    B.    Neither party shall use the name or trademark of the other or any of their respective parent companies, subsidiaries, affiliates or partners with respect to any advertising, promotion, publicity or representation that either party may make in connection with its business, services and/or product lines, as applicable, without the prior written consent of the other party. Neither party will delay or withhold such consent unreasonably.

## 22. NOTICES

    A.    Any notice delivered under this Agreement shall be in writing and shall be delivered by facsimile, certified mail or recognized overnight courier service addressed to the parties at the addresses set forth on the signature page of this Agreement or to such other address as a party may subsequently designate in a written notice delivered pursuant to this provision.

    B.    Any notice given by Certified U.S. Mail or courier delivery service shall be effective on the earliest of (i) the expiration of five (5) business days after the day it is mailed, or (ii) the date of receipt as evidenced by the U.S. Postal Service's domestic return receipt or courier delivery service receipt. Any notice given by sending a facsimile to the applicable facsimile telephone number shall be effective as of the next business day after the date of receipt of such facsimile as shown by a facsimile confirmation report.

## 23. RELATIONSHIP OF PARTIES

    A.    Contractor's relationship with Crown pursuant to this Agreement is that of independent contractor. All persons employed by Contractor in the performance of the Work shall be under the sole and exclusive direction and control of Contractor and shall not be considered for any purpose to be the employees of Crown. Contractor shall be separately and exclusively responsible for the acts and omissions of its employees and those of its Lower Tier Contractors. Contractor shall supervise and direct the Work, using the highest skill and attention, and shall be responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all Work. Contractor shall be responsible for all withholding from its employees wages as required by law, and for making all contributions in respect thereof required of employers.

    B.    The parties acknowledge that Crown Castle USA Inc. has entered into this Agreement on behalf of itself and certain of its affiliates for convenience in order to establish uniform terms and conditions for Work awarded by any of such Crown affiliates to Contractor. The foregoing notwithstanding, Contractor hereby agrees that any claim Contractor may have arising out of or relating to this Agreement or any Work performed by Contractor shall be made only against the particular Crown entity, which executed the applicable Project Appendix and issued the applicable Purchase Order. Contractor further agrees that it shall have no claim against any other Crown entity or affiliate based only on the manner in which this Agreement was executed by Crown.

    **C.**    Contractor further agrees to not divert or solicit directly or indirectly from Crown to itself or any third parties, or solicit from any of Crown's customers or potential customers on behalf of itself or any third parties, business opportunities that Crown presents to Contractor in which Crown proposes to subcontract all, or a portion thereof, to Contractor.

## 24.  APPLICABLE LAW; VENUE

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without regard to conflicts of law principles. All suits, actions or other proceedings brought by Contractor against Crown arising out of or relating to this Agreement shall be brought only in the Court of Common Pleas, Allegheny County, Pennsylvania or the United States District Court for the Western District of Pennsylvania.  In connection with any suit, action or other proceeding brought by Contractor against Crown, Contractor (a) irrevocably submits itself to the non-exclusive jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania or the United States District Court for the Western District of Pennsylvania for the purposes of any such suit, action or other proceeding; (b) waives and agrees not to assert, by way of motion, as a defense, or otherwise, in any suit, action or proceeding, (i) any claim that Contractor is not personally subject to the jurisdiction of the above-named courts, (ii) the suit, action or proceeding is brought in an inconvenient forum, or (iii) the venue of the suit, action or proceeding is improper.

## 25.  AMENDMENTS; NO WAIVER

No amendment, waiver or discharge of any provision of this Agreement will be effective unless made in a writing that specifically identifies this Agreement and the provision intended to be amended, waived or discharged and is signed by Crown and Contractor.  Each such amendment, waiver or discharge will be effective only in the specific instance and for the purpose for which it is given.

## 26.  CUMULATIVE REMEDIES

The enumeration of specific rights and remedies of Crown shall not be construed to deny the existence or the effect of, or to impair or diminish, any other rights or remedies of Crown available at law or in equity.

## 27.  SEVERABILITY

If any provision of this Agreement is held to be invalid, illegal or unenforceable in any jurisdiction, for any reason, then, to the fullest extent permitted by law, all other provisions hereof will remain in full force and effect in such jurisdiction and will be liberally construed in order to carry out the intent of the parties hereto as nearly as may be possible, and such invalidity, illegality or unenforceability will not affect the validity, legality or enforceability of any other provision hereof.  Any court or arbitrator having jurisdiction over this Agreement shall have the power to reform such provision to the extent necessary for such provision to be enforceable under applicable law.

## 28.  ASSIGNMENT

Contractor shall not assign any right or interest under this Agreement or, subject to the provisions of **Section 7** of this Agreement, delegate any obligation under this Agreement or any other Contract Document without the prior written consent of Crown.  Contractor shall be responsible to Crown for all Work performed by Contractor's Lower Tier Contractors. Crown may assign this Agreement or any related agreements to its parent or any joint venture in which it participates, or any subsidiary, affiliate, or successor to Crown, its parent or any such joint venture.

## 29.  CONSTRUCTION

Crown and Contractor acknowledge that this Agreement shall not be construed in favor of or against Crown solely on the basis of the fact that Crown drafted the Agreement and that this Agreement shall not be construed as an offer until such time as it is executed by one of the parties and then tendered to the other party.

**30.   TERM OF AGREEMENT**

This Agreement shall become effective on the date first above written. Unless sooner terminated in accordance with Article 15-Termination, this Agreement shall remain in force and effect for a one (1) year period, with automatic renewal for successive annual one (1) year periods, provided that either party may terminate this Agreement as of the end of any such annual period by giving no less than thirty (30) days prior written notice thereof to the other party.

**31.   ENTIRE AGREEMENT**

This Agreement and the other Contract Documents constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior or contemporaneous oral or written communications, understandings or agreements between the parties with respect to such subject matter. In no event shall preprinted terms or conditions found on any proposal, acknowledgment or other document issued by Contractor (whether or not signed by Crown) be considered part of, or an amendment or modification to, this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written, intending to be legally bound hereby.

**CROWN:**
CROWN CASTLE USA INC.
For itself and its affiliates

By: _____
Name:  DAVE TANZOS  Area President
Title:  Great LAKES AREA

**Address:**
Crown Castle USA Inc.
2000 Corporate Drive
Canonsburg, PA  15317
Attention:  Procurement Department
Facsimile:  724-416-2130

**CONTRACTOR:**
Tower Reinforcement, Inc

By: _____
Name:  Michael J. Kopshever Sr.
Title:  President

**Address:**
2301 W. Michigan, Suite I
Evansville, IN 47712
_____
Attention:  Michael J. Kopshever Sr.
Facsimile:  812-421-1366

# EXHIBIT A
## CONTRACTOR INVOICING REQUIREMENTS

A.    The following information **MUST** be included with each and every invoice that Contractor submits to Crown for payment, unless a particular item is clearly inapplicable or unknown.  Project Appendices may impose additional requirements applicable to work performed on specific projects for certain Crown customers.

    1.    Crown site Business Unit Number. Add per line item if invoice covers more than one site.

    2.    Contractor's Name, phone number and contact

    3.    Contractor's Crown Vendor No.

    4.    Contractor's Invoice No.

    5.    Invoice Date

    6.    Time period covered by invoice

    7.    Contractor's Master Agreement No.

    8.    Project Appendix No.

    9.    Project Name

    10.    Candidate Site Identification (Site Acquisition Work)

    11.    Crown Purchase Order No.

    12.    Crown Customer Name

    13.    Crown Contractor Partial Release and Waiver of Liens (Exhibit B-1)

    14.    Contractor's List of its Relevant Subcontractors (Attachment 1 to Exhibit B-1)

    15.    Contractor's Lower Tier Contractor Release and Waiver of Liens (Exhibit B-2)

    16.    JDE Coding if known (XXXXX-XXXX-XXXXX)

B.    Contractor shall send the **original** invoice to:

    Crown Castle USA Inc.

    Accounts Payable Department

    2000 Corporate Drive

    Canonsburg, PA  15317

with **copies** sent to the Crown office awarding and responsible for the Contractor's Work.

*Failure to comply with any aspect of these Contractor Invoicing Requirements will result in delay to payment being effected by Crown.*

# EXHIBIT B-1
## CROWN CONTRACTOR PARTIAL RELEASE AND WAIVER OF LIENS

Contractor Name and Address:

_____

_____

_____

_____

_____

Crown Vendor No._____

Subject Invoice Number: _____

Crown Purchase Order No.: _____

Purchase Order Amount: _____

Previously Invoiced Amount: _____

Subject Invoice Amount: _____

Crown Site: _____

Crown Customer Name: _____

Crown Job No.: _____

As required by the terms of the above-referenced Agreement, and/or Purchase Order, and as an independent covenant, Contractor hereby certifies that all work required to be performed pursuant to the above-referenced Purchase Order with respect to the site(s) indicated above, and covered by the Subject Invoice, has been completed in accordance with all applicable requirements and specifications.

Contractor further certifies that all of its suppliers of labor, materials, superintendence or any other services or commodities, whether under direct contractual obligation of Contractor or not (the "Subcontractors"), who have contributed directly or indirectly to Contractor's fulfillment of its contractual obligations to Crown Castle USA Inc. or its affiliates ("Crown") with respect to the subject matter of the Subject Invoice, a full and complete itemized list of which Subcontractors is attached hereto as Attachment 1, have been paid in full and that there are no outstanding claims, demands or unsettled disputes between Contractor and such Subcontractors, as further evidenced by the Crown Contractor's Subcontractors' Releases and Waivers of Liens attached hereto as Exhibit "2." In the event Contractor hereafter becomes aware of any such claim, demand or dispute, Contractor agrees to notify Crown of the same within three (3) days and to immediately discharge, bond or satisfy any such claim, demand or dispute at Contractor's sole expense. Contractor further agrees that Crown may withhold any payments otherwise due Contractor in relation to this or any other work until such claim, demand or dispute shall have been settled to Crown's reasonable satisfaction; provided, however, that if such claim, demand or dispute shall not have been settled within a reasonable period of time, Crown may discharge the same and deduct the amount expended from the amount due Contractor.

Except for payment of the Subject Invoice in the amount of $_____ (the Invoice Amount), and any other unpaid invoices, Contractor hereby certifies that it has been paid in full for all work performed under or in connection with the above-referenced site(s) as covered by the Subject Invoice(s). In consideration for said work and provided said Invoice Amount is paid in full, Contractor hereby waives and releases any and all claims, liens or right of lien it has or may have with respect to Crown, Crown's customer and the landowner, including, but not limited to, claims, liens and rights of liens for payment of the contract price, to the extent covered by the Subject Invoice. Contractor agrees to indemnify and hold Crown, its customer and landowner harmless from and against any and all claims, demands or liens arising in connection with Contractor's work performed in connection with said invoice, including, but not limited to, claims of Subcontractors and/or any governmental agency.

This document does not operate as acceptance by Crown or its customer of any incomplete work or work not in conformance with the contract documents, nor does it relieve Contractor of its continuing obligations, such as warranty and repair, under said contract documents. The remedies provided herein are not exclusive, but rather are in addition to any remedies that may be available to Crown and/or its customer at law or in equity.

IN WITNESS WHEREOF, the undersigned has executed this Lien Waiver as of the ____ day of _____, 200__, intending to be legally bound hereby.

CONTRACTOR:

_____

ATTEST:

_____

By: _____

Name: _____

Title: _____

STATE OF _____)

_____): SS.

COUNTY OF _____)

On this, the ____ day of _____, 200__, before me, a Notary Public, the undersigned officer, personally appeared _____, who acknowledged himself/herself to be the _____ of _____, the Contractor named in the foregoing instrument, and that he/she, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of Contractor.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____

Notary Public

My Commission Expires:

General Construction – Revision M

## ATTACHMENT 1 to EXHIBIT B-1
### CONTRACTOR'S LOWER TIER CONTRACTOR LISTING

Contractor Name and Address:

_____

_____

_____

_____

Subject Invoice Number: _____

Crown Purchase Order No.: _____

Invoice Amount: _____

Crown Site(s): _____

Crown Vendor No.: _____

Per the attached invoiced, Contractor hereby warrants and represents that the following Lower Tier Contractors, which provided services and/or materials for the above referenced site. Failure of Contractor to provide an accurate list of Lower Tier Contractors is a material breach of Contractor's agreement with Crown any may result in termination. Failure to provide lien releases for Lower Tier Contractors will result in a rejected invoice.

| Lower Tier Subcontractor Name | Amount of Invoice | Release Attached |
|---|---|---|
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |
| _____ | _____ | Yes / No |

Total Lower Tier Contractor Invoices:     $_____

There were no Tier Lower Tier Contractors:     Yes / No

**CONTRACTOR:**

ATTEST:

-------------------------------------------

-------------------------------------------

By: _____

Name: _____

Title: _____

## EXHIBIT B-2
## CONTRACTOR'S LOWER TIER CONTRACTOR RELEASE AND WAIVER OF LIENS

Lower Tier Contractor Name and Address:

_____

_____

_____

_____

_____

Crown Contractor Name: _____

Crown Contractor Number: _____

Subject Invoice Number: _____

Purchase Order Number: _____

Purchase Order Amount: _____

Previously Invoiced Amount: _____

Subject Invoice Amount: _____

Crown Site: _____

Crown Customer Name: _____

Crown Job No.: _____

Lower Tier Contractor certifies that all work required to be performed pursuant to the above-referenced Purchase Order, or other contractual document, with respect to the site(s) indicated above has been completed in accordance with all applicable requirements and specifications.

Lower Tier Contractor hereby certifies that it has been paid in full by Contractor for all work performed under or in connection with the above-referenced site(s). In consideration for said work and payment of the final balance in full, Lower Tier Contractor hereby waives and releases any and all claims, liens or right of lien it has or may have with respect to Crown, Crown's customer and the landowner, and/or any of their respective real or personal property, including but not limited to, claims, liens and rights of liens for payment of the contract price. Lower Tier Contractor agrees to indemnify and hold Crown, its customer and landowner harmless from and against any and all claims, demands or liens arising in connection with Lower Tier Contractor's work performed under the referenced Purchase Order, or other contractual document, including but not limited to, claims of suppliers of labor, material, superintendence or any other service or commodity and of any government agency.

This document does not operate as acceptance by Crown or its customer of any incomplete work or work not in conformance with the contract documents, nor does it relieve Lower Tier Contractor of its continuing obligations, such as warranty and repair, under said contract documents. The remedies provided herein are not exclusive, but rather are in addition to any remedies that may be available to Crown and/or its customer at law or in equity.

IN WITNESS WHEREOF, the undersigned has executed this Lien Waiver as of the ___ day of _____, 200__, intending to be legally bound hereby.

LOWER TIER CONTRACTOR

ATTEST:

_____

_____

STATE OF _____ )

COUNTY OF _____ )

_____

By: _____

Name: _____

Title: _____

): SS.

On this, the ___ day of _____, 200__, before me, a Notary Public, the undersigned officer, personally appeared _____, who acknowledged himself/herself to be the _____ of _____, the Contractor named in the foregoing instrument, and that he/she, in such capacity, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing on behalf of Contractor.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires:

# EXHIBIT C
## FORM OF CHANGE ORDER

Vendor No.: _____     Master Agreement No.: _____

Change Order No.: _____     To Project Appendix No. _____

Date: _____     BU Number: _____

Contractor's Name: _____

This Change Order is issued as of the date set forth above by Crown Castle USA Inc. or its affiliate named on the signature page hereto ("Crown") to the above-named contractor ("Contractor").

1.    **Incorporation of General Construction Master Services Agreement.**

Contractor and Crown are parties to that certain General Construction Services Master Agreement dated _____ (the "Master Agreement") which provides certain uniform terms and conditions which govern the parties' responsibilities. Pursuant to the Master Agreement, Crown and Contractor have entered into the above-described Project Appendix (the "Project Appendix"). The Master Agreement and the Project Appendix are hereby incorporated by reference into this Change Order. Capitalized terms used in this Change Order and not otherwise defined herein shall have the respective meanings ascribed to them in the Master Agreement.

2.    **Change Order Statement of Work.**

Except as otherwise provided in this Change Order, Contractor, at its expense, shall furnish all labor, materials, tools, machinery, vehicles, transportation and other facilities necessary to perform the additional or changed Work described on Attachment A hereto (the "Scope of Work"), and, as applicable, the Project Appendix and the Purchase Order are hereby deemed to be amended accordingly, as applicable.

(Attach Scope of Work, including drawings and Schedule of Values, as applicable.)

3.    **Contract Price Adjustment.**

Original Contract Amount     $_____
Amount of this Change Order     $_____
Revised Contract Amount     $_____

4.    **Time of Completion.**

The schedule for the Project described in the Project Appendix, as amended by this Change Order, shall be extended/shortened by ___ days and shall be substantially completed no later than _____.
                                                                                              (Insert Date)

5.    **Other Documents.**

The following additional documents are incorporated by reference into this Change Order:

**Crown Castle USA Inc.:**

By: _____

Name: _____

Title: _____

Date: _____

## EXHIBIT D

### ELEVATED WORK CERTIFICATE

All of the individuals named below (*Contractor and Lower Tier Contractors*) have successfully completed training in one or more of the following safety courses:  a) Comtrain,  b) DBI/SALA,  c) Tractel,  d) Safety Connection,  e) Dalloz Fall Protection,  f) Gravitec Systems Inc.

Contractor certifies that the individuals named below have received adequate safety training and agrees that Contractor shall not permit any other individuals to perform Elevated Work.

| Name of Certified Climber (State if Qualified to Instruct) | Employee Of | Certifying Company | Date of Initial Certification | Date of Last Re-certification |
|---|---|---|---|---|
| Mike Murphy | TRI | ComTrain LLC | 1/27/05 | 1/27/05 |
| Anthony Watkins | TRI | ComTrain LLC | 1/27/05 | 1/27/05 |
| Elliott Rainbow | TRI | ComTrain LLC | 1/27/05 | 1/27/05 |
| Troy Harris | TRI | ComTrain LLC | 1/27/05 | 1/27/05 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

(continue on attached sheet if necessary)

Upon request by Crown, Contractor shall provide any certificates issued by the third party providers of the above referenced safety courses, or other acceptable evidence that the above listed individuals, and any additional individuals who will perform Elevated Work, have successfully completed one of the above referenced safety courses, with appropriate refresher courses as may be required by any regulatory body.

By Contractor: _____

Signature: _____   Date: _____

Name (Print): _____   Title: _____

# EXHIBIT E

## INSURANCE REQUIREMENTS

A.  During the performance of Work, Contractor, at its sole expense, shall maintain in effect at all times insurance coverage with limits not less than those set forth below:

    i.  Commercial general liability insurance (occurrence based) providing coverage for: a) Premises and operations, b) Explosion, collapse and underground property damage (where applicable), c) Products and completed operations, d) Contractual liability, e) Broad form property damage, f) Independent contractors, g) Personal injury liability (employment exclusion deleted), h) Worldwide and/or global liability coverage if work is performed in Puerto Rico or outside the Continental United States of America. Minimum limits (bodily injury and property damage, combined) for the foregoing coverage shall be $1,000,000 per occurrence, $2,000,000 general aggregate (per Project) and $2,000,000 products/completed operations aggregate.

    ii.  Comprehensive automobile liability insurance covering the use and maintenance of all automobiles and other vehicles (owned and/or leased) with minimum limits of coverage for bodily injury and property damage combined at $1,000,000 per accident. Should an employee of Contractor or of its Lower Tier Contractor become involved in an accident while driving their personal vehicle in performance of Work for Crown, such employee's personal Auto Liability insurance coverage shall be primary in nature, coming into full effect before any other insurance coverage.

    iii.  Workers' compensation insurance and other employer's liability coverage (including Jones Act and Longshoremen's), for all employees in accordance with statutory requirements, with minimum limits of $100,000 per accident (employer's liability), $100,000 each person (disease) and $500,000 policy limit (disease). If providing services in Puerto Rico, or outside of the continental United States, worldwide and/or global liability insurance must be provided for all employees in accordance with all applicable statutory requirements.

    iv.  Umbrella form of Excess Liability offering coverage that at least follows the form of underlying insurance coverage, with minimum limits of $5,000,000 for each occurrence and $5,000,000 in the aggregate.

    v.  If Contractor provides architectural, engineering or other professional services pursuant to this Agreement, Contractor shall obtain and maintain professional liability insurance covering the scope of Work to be performed by Contractor with minimum limits of $1,000,000 for each claim and $1,000,000 in the aggregate, Contractor shall maintain such coverage in effect for not less than three (3) years from Final Completion of the last Project performed by Contractor pursuant to this Agreement if a "claims-made" policy, but not required if "occurrence type.

    vi.  If Contractor performs as General Contractor or does Tower or Rooftop installs or erections pursuant to this Agreement, Contractor shall obtain and maintain completed value Builder's or "All Risk" insurance, or an installation floater, with a limit of $300,000 (subject to a deductible per loss not to exceed $10,000) upon the entire Work for replacement costs. Such policy shall include the interests of Crown, its Customer, Contractor and its Lower Tier Contractors in the Work as named insureds, as their interests may appear, shall name Crown as the loss payee, and shall be on an "All Risk" basis for physical loss or damage for portions of the Work while it is stored off the Work site, is in transit, and during installation, and shall include all materials, equipment, machinery or supplies to be incorporated in the Work, regardless of whether furnished directly or indirectly by Crown or Contractor.

B.  The insuring carriers and the form of the insurance policies shall be subject to approval by Crown and shall provide that not less than thirty (30) calendar days prior written notice shall be given to Crown prior to cancellation, termination or material alteration of said policies of insurance. **Crown Castle USA Inc. and its parent, joint ventures, subsidiaries, and affiliates, as their interest may arise,** shall be named as additional insureds on all applicable policies other than workers' compensation insurance and professional liability insurance. Pursuant to the applicable Project Appendix, Crown may require that its customer also be named as an additional insured. All such insurance policies shall waive the right of recovery or subrogation against Crown and its customer. Contractor shall furnish to Crown certificates evidencing such insurance coverage in a form satisfactory to Crown prior to and as a condition to becoming an approved Crown contractor, and thereafter upon renewal of coverage or at the request of Crown. Prior to the commencement of any work, insurance certificates shall be delivered to the Crown office indicated in the applicable Project Appendix, attention: Legal Department -- Vendor Administration. At any time and from time to time after the execution and delivery of the foregoing Agreement, Crown may require Contractor to obtain and maintain additional or alternative insurance coverages with limits in addition to or greater than those described above.

# ACORD™  CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YY) 01/10/05

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

Schulthels Insurance Agency
32 N Weinbach Avenue
PO Box 2728
Evansville, IN 47728-0728

**INSURERS AFFORDING COVERAGE**

INSURED
Tower Reinforcement Inc
2301 W Michigan St Ste I
Evansville, IN 47712-5283

| INSURER A: | Cincinnati Insurance Company |
|---|---|
| INSURER B: | Ohio Casualty Insurance |
| INSURER C: | Liberty Mutual |
| INSURER D: | |
| INSURER E: | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE | LIMITS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS MADE [X] OCCUR | CAP5062589 | 01/10/05 | 01/10/06 | EACH OCCURRENCE | $1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $100,000 |
| | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [ ] POLICY [ ] PRO-JECT [ ] LOC | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | AUTOMOBILE LIABILITY [ ] ANY AUTO [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS [ ] HIRED AUTOS [ ] NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | GARAGE LIABILITY [ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN EA ACC / AUTO ONLY: AGG | $ |
| B | EXCESS LIABILITY [ ] OCCUR [ ] CLAIMS MADE | ECO053148184 | 01/10/05 | 01/10/06 | EACH OCCURRENCE | $4,000,000 |
| | | | | | AGGREGATE | $4,000,000 |
| | [ ] DEDUCTIBLE [ ] RETENTION $ | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | WC7345354703 | 02/08/04 | 02/08/05 | [ ] WC STATU-TORY LIMITS [ ] OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $100,000 |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $100,000 |
| | | | | | E.L. DISEASE - POLICY LIMIT | $500,000 |
| A | OTHER Comm. Umbrel | CAP5062589UM | 01/10/05 | 01/10/06 | $1,000,000 Occurrence $2,000,000 Aggregate | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
Crown Castle USA Inc and its subsidiary and affiliated
companies are named as Additional Insureds on all policies
except Workers Compensation and Professional Liability.

(See Attached Descriptions)

| CERTIFICATE HOLDER | ADDITIONAL INSURED; INSURER LETTER: | CANCELLATION |
|---|---|---|
| Crown Castle USA Inc Legal Department 2000 Corporate Drive Canonsburg, PA 15317 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 10 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

ACORD 25-S (7/97) 1   of 3   #S5673/M1198      LW      © ACORD CORPORATION 1988

# IMPORTANT

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

## DISCLAIMER

The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon.

All policies provide waivers of subrogation rights as against
"Crown Castle USA Inc and its subsidiary and affiliated companies"
as stipulated and described under the policies.

# CERTIFICATE OF INSURANCE

01/05/05

**PRODUCER**
HANOVER EXCESS & SURPLUS, INC.
P.O. BOX 12450
WILMINGTON, NC 28405

TJ

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**COMPANIES AFFORDING COVERAGE**

| | |
|---|---|
| COMPANY LETTER A | HOUSTON CASUALTY |
| COMPANY LETTER B | |
| COMPANY LETTER C | |
| COMPANY LETTER D | |
| COMPANY LETTER E | |

**INSURED**
TOWER ENGINEERING PROFESSIONALS INC
3703 JUNCTION BLVD
RALEIGH, NC 27603

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM, OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN. THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | ALL LIMITS IN THOUSANDS | |
|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** COMMERCIAL GENERAL LIABILITY / CLAIMS MADE / OCCURRENCE / OWNER'S & CONTRACTORS PROTECTIVE | | | | GENERAL AGGREGATE / PRODUCTS-COMP/OPS AGGREGATE / PERSONAL & ADVERTISING INJURY / EACH OCCURRENCE / FIRE DAMAGE (ANY ONE FIRE) / MEDICAL EXPENSE (ANY ONE PERSON) | $ |
| | **AUTOMOBILE LIABILITY** ANY AUTO / ALL OWNED AUTOS / SCHEDULED AUTOS / HIRED AUTOS / NON-OWNED AUTOS / GARAGE LIABILITY | | | | CSL / BODILY INJURY (PER PERSON) / BODILY INJURY (PER ACCIDENT) / PROPERTY DAMAGE | $ |
| | **EXCESS LIABILITY** OTHER THAN UMBRELLA FORM | | | | EACH OCCURRENCE $ | AGGREGATE $ |
| | **WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY** | | | | STATUTORY $ (EACH ACCIDENT) / $ (DISEASE-POLICY LIMIT) / $ (DISEASE-EACH EMPLOYEE) | |
| A | **OTHER** E & O | H704-13471 | 06/21/04 | 06/21/05 | $1,000,000 | |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/RESTRICTIONS/SPECIAL ITEMS**
$50,000 DEDUCTIBLE EACH CLAIM INCLUDING CLAIM EXPENSES

## CERTIFICATE OF HOLDER

TOWER REINFORCEMENT INC
ATTN TOM KOPSHEVER
2301 W MICHIGAN SUITE 1
EVANSVILLE, IN 47712

FAX#919-787-1896(A)

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UP ON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.

AUTHORIZED REPRESENTATIVE
David Harlin

received