**EXHIBIT "B"**

Vendor No. <u>**216909**</u>

Master Agreement No. <u>**216909A**</u>

**THIS A&E MASTER SERVICES AGREEMENT** is made as of this \_\_7th\_\_ day of \_February\_, 2005 between Crown Castle USA Inc., for itself and its affiliates, (collectively, "Crown"), and **Tower Reinforcement, Inc, an Indiana corporation** having a principal location at **2301 W. Michigan Avenue., Suite I, Evansville, IN 47712** ("Contractor").

Crown desires to engage Contractor to perform certain construction services for Crown and Contractor desires to perform such services as Crown may from time to time require. Such services may include:

The specific services which Contractor may be engaged to provide, if any, are generally indicated as follows and will be specifically described in the Crown Purchase Order and/or the Project Appendix (as defined below), executed and delivered by the parties. Contractor may perform such services directly for Crown or as a subcontractor of Crown for the ultimate benefit of a third party. The definitions below are not scopes-of-work but a general guideline and summary of the services contemplated. The Crown Purchase Order or Project Appendix will detail the scope of work requested.

- [x] **Drawings & Designs for Zoning, Equipment Installation, Construction, and Reinforcement:** Drawings and Design used by Crown and or its subcontractors for zoning, building, modifying, and removing Towers or for the installation/de-installation of equipment on a Crown asset. All drawings are to be sufficiently detailed that a competent contractor can execute the requirements.

- [ ] **Geo-Technical Testing & Reports:** The science of soil mechanics, rock mechanics, engineering geology and other related disciplines. The Contractor may be required to perform a soil mechanics analysis of the tower compound area or evaluate an existing analysis of site. Contractor to evaluate the integrity of the existing tower foundation with non-destructive, non-intrusive testing consisting of some form of ultrasound imaging or RF imaging techniques. Contractor to recommend appropriate tower loading or suggest modifications to the tower foundation to meet the proposed increase in tower loading.

- [ ] **Implementation/Construction Management and Inspection Services:** Represents Crown in monitoring construction related activity as assigned to ensure full compliance to contractual documents including the Crown Purchase Order, specifications and the General Construction Master Services Agreement. The firm is not authorized to hire any contractors or subcontractors or have any contractual relationship to the Contractor they are monitoring for Crown.

- [ ] **Structural Analysis:** Evaluation of Structural Integrity by providing a "Structural Review and Opinion Letter" and or a Structural Analysis to Crown. The evaluation shall be in accordance with latest agreed to version of the "Tower Structural Analysis Scope of Work" of the CCUSA Engineering Standards, and suitable for approval by local/municipal governments, wireless carrier/customers, and Crown. Crown may issue firm and fixed priced Purchase Orders or Purchase Order Releases from a Blanket Purchase Order in accordance with the attached Exhibit D, "Pricing Schedule".

- [x] **Tower Foundation Analysis:** Tower foundations are defined as those sub-grade systems that provide the primary support for the tower structure. It is desired by Crown to obtain an evaluation of the suitability of tower foundations to adequately support the tower structure and its associated loading. The evaluation shall be suitable for approval by local/municipal governments, wireless carrier/customers, and Crown.

- [x] **Tower Mapping:** Determine tower height as well as equipment and materials on the tower.

- [ ] **Unknown Tower Foundation Investigation:** Unknown foundations are defined as those sub-grade systems that provide the primary support for the tower structure. Where as-built documentations are unavailable or where the records themselves may be questionable, it is desired by Crown to obtain foundation dimensions, and depths by defined foundation evaluation vendors.

Notwithstanding the categories of work that Contractor indicated that it desired to perform when it returned Crown's Vendor Qualification Questionnaire, Contractor is approved for, and limited to performance of, **only the**

above identified categories of Work with noted restrictions. No Crown person is authorized to award any work to Contractor that is outside the above categories and restrictions, and Contractor is obligated to promptly notify Crown's Area Vice President Program Management if any Crown Purchase Order issued to them exceeds the types of work for which Contractor has been approved to perform hereunder. Moreover, Contractor understands and acknowledges that it is not entitled to any reimbursement from Crown for work it may perform that does not fall within the above categories or restrictions, and Contractor shall indemnify and hold Crown harmless for any and all claims arising from its performance of such non-permissible work.

1. **DEFINITIONS**

   As used in this Agreement, the following capitalized terms have the respective meanings ascribed to them below:

   **"Agreement"** means this A&E Services Master Agreement, together with the following Exhibits attached hereto and incorporated by reference herein:

   Exhibit A – Contractor Invoicing Requirements
   Exhibit B – Change Order Form
   Exhibit C – Insurance Requirements
   Exhibit D – Tower Analysis Scope of Work (if approved for Structural Analysis on Page 1)

   **"Confidential Information"** means information, including, but not limited to, information regarding Crown assets, liabilities, operations, financial conditions, employees, plans, prospects, management, investors, products, strategies and techniques, the technical characteristics and operations of Crown products, and the identity of suppliers and customers and the nature and extent of Crown's business relationships with such parties.

   **"Contract Documents"** means this Agreement, together with any Project Appendices, attachments, exhibits, drawings, specifications, reports, studies, instructions, Purchase Orders or other documents issued by Crown or incorporated by reference in connection with a Project.

   **"Change"** means any addition or alternative to, or deductions or deviations from, or substitution in the Work to be performed pursuant to this Agreement and the Contract Documents.

   **"Change Order"** means a written directive issued by Crown pursuant to which Contractor shall implement a Change, as provided in **Section 6** of this Agreement.

   **"Disclosing Party"** means the party which discloses Confidential Information.

   **"Final Completion"** of a particular Project shall be deemed to have occurred when Contractor has performed all of the Work required by the applicable Contract Documents and Contractor shall have delivered all required documentation, including all elements of any required close-out package, as directed by Crown's Project Manager. Final Completion shall occur and be determined on a site by site basis.

   **"Lower Tier Contractor"** means any service provider, person, company or entity with which Contractor shall have entered into an agreement to provide services in connection with any Project.

   **"Project"** means Work to be performed by Contractor on a site or group of sites, or some other form of Work awarded by Crown to Contractor, as described in a Project Appendix and as may be more specifically identified in one or more Purchase Orders.

   **"Project Appendix"** means a supplement to this Agreement which describes the specific Work on a Project which may be performed by Contractor, as more fully described in **Section 2** of this Agreement.

   **"Purchase Order"** means a written instrument issued by Crown pursuant to a Project Appendix and this Agreement which authorizes Contractor to proceed with Work on a specific site or group of sites.

   **"Receiving Party"** means the party to which Confidential Information is disclosed.

"**Work**" means the tasks, collectively, which Contractor is engaged by Crown to perform, pursuant to and as described in the Contract Documents.

2. **PROJECTS AND WORK**

   A. This Agreement is entered into with no guaranteed quantity or value of Work to be awarded to Contractor. Crown shall have no obligation to Contractor, and Contractor shall have no obligation to Crown, unless and until a Purchase Order is issued by Crown to Contractor. A Purchase Order may set forth more specific terms and conditions, in addition to those set forth in this Agreement, including the specific scope of work, schedule, payment schedule, invoicing requirements and any other obligations from Crown's contract with its customer which must be assumed or adopted by Contractor with respect to a particular Project. In the event that Contractor should commence Work before its receipt of a Purchase Order and notice to proceed signed by Crown and accepted by Contractor ("NTP"), Crown shall have no obligation to pay for such Work.

   B. From time to time after the parties have executed and delivered this Agreement, the parties may agree upon, execute and deliver one or more Project Appendices which describe in detail specific Projects which may be undertaken by Contractor, including the materials and services required, the schedule, payment terms, invoicing requirements and any other or additional terms and conditions applicable to each such Project. Each such Project Appendix shall be governed by the terms and conditions of this Agreement. The execution and delivery by the parties of a Project Appendix is no guarantee of Work to be awarded to Contractor, nor shall a Project Appendix be deemed to be an authorization for Contractor to commence any Work.

   C. In the event of a conflict between the terms of this Agreement and a Project Appendix, the terms of the Project Appendix shall control.

   D. This Agreement is not exclusive and Crown may, in its sole discretion, choose to obtain from other contractors or itself perform the same or similar services as those provided by Contractor.

   E. Contractor and its subcontractors who produce drawings of any sort for Crown or on Crown's behalf under this Agreement, shall do so in complete compliance with the requirements of Crown's "CCUSA Engineering Standards" or its latest update, if any, a copy of which shall be provided at the time of execution of this Agreement. Crown's CAD Standard for drawings shall be strictly followed, EXCEPT where a Customer's specifications differ in a more stringent manner, as determined and confirmed solely by Crown in the respective Project Appendix.

   F. **Radio Frequency Exposure Safety**

      I. Contractor represents and warrants that it is fully aware of and knowledgeable about the inherent dangers of working on or near tower, rooftop, or other wireless communication sites that are "live", i.e. that are actively receiving and/or transmitting radio signals that may create radio frequency radiation ("RFR") (hereinafter "Live Sites").

      II. Contractor shall not permit any of its employees nor its Lower Tier Contractor's employees to enter a Live Site until and unless they have completed RFR Safety Training in accordance with FCC OET 65, OSHA 1910.97 and OSHA 1910.268 or the most current applicable updates in OSHA regulations (c) guidelines as evidenced by each employee's achieving a passing score ( 79% of answers correct ) on a RF Hazard and Safety Principles test (the "Test") administered by SiteSafe, Inc. of Arlington, VA (703) 276-1100 x206 for a nominal fee (request "Crown Castle Exam—Only Special").

      If an employee does not receive a passing score on the Test, he or she may retake it or complete further RF safety training as necessary for the employee to achieve a passing score on the Test.

      Contractor shall maintain a record of its employees' (who it proposes have Live Site access) satisfaction of such testing requirement and completion of such training (as

applicable) and shall make such record available for Crown's inspection and audit upon request.

iii. Contractor shall implement all procedures and take all measures necessary to ensure that none of Contractor's employees or agents or its Lower Tier Contractor's employees or agents, except those individuals who are RFR Safety Training certified, shall perform any Work on a Live Site. Crown shall have no responsibility whatsoever to monitor access to such Live Sites by Contractor's or Lower Tier Contractor's employees or agents.

iv. The presence or performance of any Work on a Live Site by any of Contractor's or its Lower Tier Contractor's employees or agents who are not RFR Safety Training certified shall constitute a material breach of this Agreement. Upon such material breach, Crown shall have the right to immediately terminate this Agreement and all Project Appendices delivered hereunder, and Contractor shall be liable to Crown for any damages and costs incurred a result of said termination.

3. **PRICING AND PAYMENT**

A. The amount to be paid by Crown to Contractor for performing the Work may be set forth in the Applicable Project Appendix and shall be definitely set forth in or determined pursuant to the applicable Purchase Order. In the event Contractor is paid hourly, such hourly rate shall be attached to the Project Appendix. Crown may withhold fifteen percent (15%) of each invoice until receipt of all deliverables required for Final Completion.

B. Contractor shall submit invoices for completed Work based on the fixed price, milestones, or hourly/daily rates set forth in the applicable Project Appendix. When compensation is paid on a milestone basis, Contractor shall not invoice Crown until the milestone is completed and the deliverables therefor are received by Crown. Where compensation is based on hourly/daily rates, the invoice will describe in reasonable detail and with respect to the relevant period: (i) the number of hours or days expended performing the Work, itemized by task; (ii) a description of Work performed; and (iii) any work product created. Such invoices shall include all information in compliance with attached **Exhibit A** Progress payments made by Crown to Contractor shall not be deemed to constitute acceptance by Crown of the Work. For Work performed on any cost basis other than firm lump sum, Crown shall have audit rights as described in Section 14.A.

C. ~~Neither Contractor nor its Lower Tier Contractors shall make, file or maintain a lien or claim of~~ any kind or character whatsoever against any tower, building or other structure to which the Work relates, or any other property or property interest owned, held, occupied or otherwise possessed by Crown, Crown's customer, or the landowner for or on account of any Work done or performance given under, arising out of, or in any manner connected with the Work, or any agreement supplemental thereto (such claims hereinafter referred to as "Claims"). Contractor shall save and hold Crown, Crown's customer and the landowner harmless from and against any and all Claims that may be filed by Contractor or its Lower Tier Contractors, and Contractor shall, at its own expense, defend any and all actions based upon such Claims and shall pay all charges of attorneys, bonding, experts or Lower Tier Contractors and all costs and other expenses arising therefrom. If Contractor fails to conform to the foregoing obligations, Crown shall have the right to retain counsel to represent or assist Crown to extinguish all Claims, and to offset all such cost and expense against any future payments, which may become due from Crown to Contractor. The foregoing covenant of Contractor is independent of any other covenant of Contractor contained in this Agreement and shall survive the expiration or termination of this Agreement.

D. If Crown becomes aware that Contractor has failed to make payments to any of its Lower Tier Contractors, or in the event that a claim is made against Crown or Crown's customer by a Lower Tier Contractor, Crown shall have the right to: (i) retain, out of payments due or to become due to Contractor, reasonable amounts necessary to satisfy any such payments and any claim, bond or lien against Crown, its customer or their property; or (ii) issue checks jointly payable to Contractor and any such Lower Tier Contractor; or, (iii) directly pay the Lower Tier Contractor and deduct the amount of such payment from any amount owing to Contractor

E.  Payments otherwise due to Contractor may be withheld by Crown on account of defective Work not remedied, claims filed, reasonable evidence indicating probable filing of claims, the failure of Contractor to perform any of its obligations, or to protect Crown against liability arising out of Contractor's failure to pay or discharge taxes or other obligations. The withholding of payment by Crown on any invoice with respect to any particular Project or Projects, or with respect to Work authorized by any particular Purchase Order or Orders, shall not affect the obligation of Contractor to continue to perform Work as required by the Contract Documents on that Project or pursuant to the particular Purchase Order and on any other Project or Projects or pursuant to any other Purchase Orders issued to Contractor. Upon written notice to Contractor stating specific reasons for withholding, Crown may setoff against amounts owed to Contractor on any particular Project or Purchase Order amounts claimed by Crown from Contractor on any other Project or Purchase Order.

F.  Contractor shall present invoices by site (BUN) to Crown within a reasonable period of time. Crown reserves the right to require Contractor to provide separate invoices for Change Orders and reimbursable expenses, pursuant to the applicable Project Appendix. Crown shall make payment to Contractor within forty-five (45) days after the receipt of a properly prepared invoice. In no event shall Crown be responsible to Contractor for interest or carrying charges on any invoice, and Contractor agrees that it shall not include any such amounts on any of its invoices to Crown. Unless otherwise agreed by Crown, Crown shall not be responsible for the payment of any invoice submitted by Contractor to Crown more than ninety (90) days after completion of the Work which is the subject of the invoice.

G.  Contractor shall forward its original invoices and any documentation required by this Agreement o accompany any invoice to the Crown office specified in the applicable Project Appendix, with a copy to such other Crown office(s) as may be specified in the applicable Project Appendix.

4. **TIME AND PROGRESS OF WORK**

Time is of the essence for all Work under this Agreement. Contractor agrees to abide by the schedule set forth in the applicable Project Appendix and to commence Work on the date(s) stipulated in the applicable Purchase Order. Contractor shall carry the Work forward expeditiously according to the applicable Work schedule and with adequate forces to achieve completion of the Work by the date(s) stipulated. No extension of the time allowed for performance of any Project will be made without the written consent of Crown.

5. **SUBCONTRACTING**

A list of Lower Tier Contractors which Contractor expects to engage on any particular Project shall be attached to the applicable Project Appendix. All subcontracts shall require that the Lower Tier Contractor be bound by and subject to all terms and conditions of this Agreement. Each subcontract or order shall contain a provision permitting assignment to Crown, or its successors, and assigns, subsidiaries, joint ventures and affiliates. Crown reserves the right to reject or require Contractor to terminate its relationship with any such Lower Tier Contractor in connection with any particular Project or Projects at any time. Crown further reserves the right to require Contractor to terminate any particular work then in progress by any of its Lower Tier Contractors if Crown's customer so notifies Crown. Contractor's engaging of any Lower Tier Contractor to perform any portion of the Work shall not relieve Contractor of its obligations to Crown pursuant to the Contract Documents. Contractor shall be responsible for Work performed by its Lower Tier Contractors.

6. **CHANGES**

A.  Without invalidating this Agreement or any other Contract Document, at any time and from time to time during the progress of the Work, Crown may, by issuing a Change Order, specify any change in all or any part of the Work which falls within the general scope of an applicable site and/or Project Appendix. Changes for which a Change Order may be proposed include, but are not limited to, changes to the scope of Work, scheduling, time, dates, deliverables or the method or manner of performance of the Work. Each Change Order shall be in the form attached to this Agreement as **Exhibit B** Each Change Order shall describe the Change requested, stating, at minimum, the date of the request for the Change, the proposed effective

date of the Change, the Project Appendix applicable to the Work affected by the Change, a description of the Work proposed by the Change and any adjustments to the compensation or schedule. Each such Change Order shall be signed by the applicable Crown Program Manager or someone with higher authority.

B. Other than a Change Order issued by Crown, no order, statement, letter, correspondence or conduct of Crown shall be treated as a Change, nor shall the same entitle Contractor to an equitable adjustment in compensation, scheduling or any other matter.

C. Upon issuance of a Change Order by Crown, Contractor shall promptly proceed with the Work specified therein. Contractor shall perform such Work in accordance with the Change Order and the provisions of Contract Documents relating to the Work affected by such Change.

D. Crown may request Contractor to provide price quotations and time extensions for Changes proposed by Crown. Such requests for quotations shall not be considered as authorizations to proceed with Changes. At such time as Contractor provides any such price quotation to Crown, Contractor shall provide to Crown a written statement outlining any delays that will occur in Contractor's performance of the Work as the result of such Change. The parties shall mutually agree upon adjustments to the contract price and/or scheduling for the performance of the Work as changed, to the extent that the applicable Change actually causes an increase in the cost of Contractor's performance or causes a delay or interruption in Contractor's performance of the Work. Contractor shall have no right to obtain any adjustment to the contract price and/or schedule if Contractor fails to outline the cost increases and/or delays which it expects to incur upon Crown's requesting the applicable Change.

7. **STANDARD OF PERFORMANCE**

    A. Contractor represents to Crown that all Work to be performed under the Contract Documents shall be performed in a first class manner in conformity with the standards and practice applicable to similar Work in the wireless communications industry and shall comply fully in all respects with all requirements of the Contract Documents.

    B. Contractor represents to Crown that Contractor is technically, financially and legally ready, willing and able to perform the Work and is familiar with and knowledgeable about applicable governmental requirements, industry standards and the operation of wireless telecommunications facilities to the extent necessary to carry out its duties in a professional, complete and competent manner. Contractor further represents to Crown that Contractor has the requisite competence, skill and physical resources to perform the Work and that it has and shall maintain the capability, experience, registrations, licenses, permits and governmental approvals required to perform the Work.

    C. In the event that Crown determines that any Work fails to conform to any of the above representations and standards required by this Agreement, in whole or in part, for a period of one (1) year following Final Completion, Crown may require Contractor to correct, revise, replace or re-perform such defective Work at Contractor's sole cost and expense.

8. **INDEMNIFICATION**

    Contractor shall indemnify, defend and hold harmless Crown, Crown's customers and their respective affiliates, customers, employees, officers, directors, agents, successors and assigns from and against any and all suits, actions, proceedings, losses, damages, claims, fines, penalties, costs and expenses (including reasonable attorneys' fees, investigation and remediation expenses) arising out of or resulting from: (i) any negligent act, error, or omission of Contractor in the performance of Work; (ii) any failure of Contractor to perform its obligations under any Contract Document or breach by Contractor of any representation, covenant or agreement contained in any Contract Document; (iii) any violation of any law or other governmental requirement by Contractor or any Lower Tier Contractor; and (iv) any infringement of any United States or other patent right by any portion of the Work performed by the Contractor or any Lower Tier Contractor. Under no circumstances, whether arising in contract, equity, tort (including negligence), or otherwise, shall either party be liable to the other for any special, indirect, incidental, or consequential damages.

9. **EXCUSABLE DELAYS**

Neither party shall be held responsible for any delay or failure in performance of any part of this Agreement to the extent such failure is caused by fire, flood, explosion, war, terrorist act, strike, embargo, government requirement (except a government requirement which Contractor knows or should have known in the exercise of reasonable diligence), civil or military authority, act of God, power blackout, earthquake, volcanic action, public enemy or other similar causes beyond the reasonable control and ability to foresee and without the fault or negligence of the delayed or non-performing party. In the event of any force majeure condition, the party delayed or unable to perform shall use its best efforts to minimize the delays and costs associated with the force majeure condition and shall immediately give notice to the other party, stating the nature of the force majeure condition and the action being taken to avoid or minimize its effect. In the event of any force majeure condition, Crown may elect to obtain from third parties or itself perform Work that was to be performed under this Agreement by Contractor or suspend this Agreement and extend the period allowed for Contractor's performance of the Work for a period of time not exceeding the duration of the force majeure condition endured. In the event of any delay, an extension of time shall be the only remedy available to Contractor.

10. **SUSPENSION**

Crown may at any time suspend Contractor's performance of all or any portion of the Work. Suspension of the Work shall not relieve or release Contractor from the obligation otherwise to perform the Work in accordance with this Agreement. Upon being notified of the suspension, Contractor shall immediately take such steps as may be necessary to eliminate, reduce and minimize costs. Contractor shall include in its agreements with Lower Tier Contractors provisions which permit Crown to suspend the Work pursuant to this Agreement without cost to Crown or Contractor. In the event of suspension, an extension of time shall be the only remedy available to Contractor.

11. **TERMINATION**

   A. If any of the following events occurs and is not cured within five (5) business days after Contractor's receipt of notice of the same from Crown, Crown may, without prejudice to any other right or remedy it may possess, terminate the services of Contractor and take control of the Work and of all materials owned by Crown and may proceed with the completion of the Work as contemplated by the Contract Documents by whatever method deemed expedient by Crown. If such five (5) day period is agreed by Crown to be unreasonable for the circumstances, Contractor shall immediately initiate curative actions and in good faith diligently pursue until the cure is complete.

      i. Contractor, in the reasonable judgment of Crown, is materially behind schedule or fails to perform the Work in a satisfactory and workmanlike manner;

      ii. Contractor fails to make payments to any Lower Tier Contractor;

      iii. Contractor disregards or fails to comply with laws, ordinances, rules, regulations or orders of any public authority;

      iv. Contractor violates any material provision of any Contract Document; or

      v. Contractor fails to maintain the required levels of insurance coverage or fails to give Crown notice of termination or reduction of insurance coverage. In the event of such default, Crown, at its election, may declare this Agreement null and void and shall have no further obligation to Contractor, including any obligation to pay Contractor for any Work performed after and including the date such required insurance coverage expired. Contractor, shall at Crown's election, defend, indemnify and hold Crown harmless for Contractor's failure to maintain the required types and amounts of insurance coverage.

   B. Crown may immediately terminate this Agreement and/or any services of Contractor in the event of Contractor's gross negligence or willful misconduct or if Contractor breaches any of its

obligations pursuant to this Agreement and such breach is of a nature which could create a danger to human health, property or the environment or which could expose Crown to third party liability under any law, rule, regulation or order of any Federal, state or local government or under Crown's contract with its customer. Notice of such termination may be made orally, subject to confirmation in writing as soon as practicable thereafter. In the event of such termination, Contractor shall not be afforded the opportunity to cure the default or defaults which precipitated such termination, and Crown may take control of the Work and of all materials owned by Crown and may proceed with the completion of the Work as contemplated by the Contract Documents by whatever method deemed expedient by Crown. The expense of completing the Work shall be payable by Contractor to Crown.

C. Contractor shall not cause or permit its interest in any Contract Document to pass to any trustee, receiver, custodian or assignee for the benefit of creditors, or otherwise by operation of law. Notwithstanding any other provision of this Agreement, and to the extent permitted by law, this Agreement and all rights of Contractor and those claiming through Contractor under this Agreement or any other Contract Document will automatically cease and terminate, without requirement of notice or opportunity to cure: (i) if Contractor's interest in any Contract Document is taken in execution or by other process of law; (ii) if a proceeding under any arrangement of debt, insolvency, readjustment of debt, or receivership law or statute is filed by Contractor; (iii) if a proceeding under any arrangement of debt, insolvency, readjustment of debt or receivership law or statute is filed against Contractor by a third party and is not dismissed within 60 days; (iv) if Contractor makes an assignment for the benefit of creditors or otherwise ceases to exist; or (v) if Contractor takes any corporate action to authorize any of the actions described in this **Section 11.C**. If this Agreement terminates in accordance with this **Section 11.C**, Crown may, without prejudice to any other right or remedy it may possess, take control of the Work and of all materials owned by Crown and may proceed with the completion of the Work as contemplated by the Contract Documents by whatever method deemed expedient by Crown, and Crown's obligations for payment to Contractor shall be as set forth in **Section 11.D** below.

D. In the event Crown terminates this Agreement for cause, Crown shall have no obligation to pay Contractor for Work which Crown deems unacceptable, late or not in compliance with the Contract Documents.

E. Crown may terminate this Agreement, or any one or more Project Appendices, at any time, at its discretion and without cause, by written notification to Contractor delivered not less than fifteen (15) days prior to the specified date of termination. Contractor shall, as of the date of termination and as applicable: (i) terminate all orders in connection with the Work so terminated, to the extent the same can be terminated without cost to Crown or Contractor; (ii) terminate and settle, subject to approval of Crown, other orders and subcontracts where the cost of settlement will be less than costs which would be incurred if such orders and subcontracts were to be completed; and, (iii) if directed by Crown and to the extent stated in the notice of termination, do such Work as may be necessary to preserve the Work in progress. If Crown terminates this Agreement or any one or more Project Appendices pursuant to this **Section 11.E**, Contractor shall be compensated for Work properly performed prior to and in connection with such termination.

F. Upon termination as described in **Sections 11.A, 11.B, 11.C, 11.D and 11.E**, Contractor shall return all work product to Crown promptly upon receipt of notice of termination.

12. **INSURANCE**

A. During the performance of Work, Contractor, at its sole expense, shall maintain in effect at all times, and shall require its Lower Tier Contractors to maintain in effect at all times, insurance coverage with limits not less than those set forth on **Exhibit C** attached to this Agreement.

B. Any insured loss or claim of loss against which Crown believes it has a right to indemnification under this Agreement, shall be negotiated by Contractor with full notice to and participation by Crown. Any settlement payments made as a result of such insured loss or claim of loss against which Crown is indemnified hereunder, shall be made payable to Crown. If the parties are unable to agree between themselves on the settlement of the loss, such dispute shall be submitted to a court of competent jurisdiction to determine ownership of the disputed amounts.

The Work shall nevertheless progress during any such period of dispute (subject to all other provisions herein) without prejudice to the rights of any party to the dispute. Contractor shall be responsible for any loss within the deductible limit of the policy.

C. The provisions set forth in this Agreement with respect to the types of insurance required, minimum limits and Crown approval requirements are not intended to and shall not in any manner limit or qualify the liabilities and obligations assumed by Contractor under this Agreement.

13. **LAWS, PERMITS AND TAXES**

   A. At its expense, Contractor shall comply with and give all notices required by all federal, state and local laws, ordinances, rules, regulations and orders bearing on the performance of the Work. Contractor shall have the responsibility to ensure that all of its Work and that of its Lower Tier Contractors comply with said laws, ordinances, rules, regulations and orders.

   B. Contractor shall secure all licenses, permits and inspections, pay all related charges and fees and give all notices necessary for the due and lawful prosecution of its Work.

   C. Unless otherwise agreed in writing, Contractor shall pay all applicable taxes imposed on Contractor by law including, but not limited to sales, use, property and taxes on income, including all penalties and interest thereon.

   D. Contractor and its Lower Tier Contractors shall pay all taxes measured by wages, salaries or other remuneration of their employees required by the Federal Insurance Contributory Act as amended, any other applicable Federal laws, or the applicable laws of the state and/or locality in which the Work is performed. Contractor hereby agrees to indemnify and hold Crown harmless from any liability on account of any and all such taxes, liens, duties, assessments, deductions and benefits, in addition to any penalty, interest or other charge that may be levied as a result of Contractor's or any Lower Tier Contractor's late payment, insufficient payment or failure to pay any such taxes.

   E. Contractor and its Lower Tier Contractors shall file such returns, reports or forms necessary for the payment of taxes.

   F. Upon written request, Contractor shall submit to Crown written evidence of any filings or payments of all taxes relating to the Work, including government furnished receipts and detailed documentation by the Federal government or any applicable states. Crown reserves the right to contest, or cause Contractor to contest, any such tax, fee or assessment, and Contractor shall use its best efforts in cooperating with Crown in any such contest.

14. **INSPECTION; AUDIT**

   A. For Work performed on any cost basis other than firm lump sum, Crown shall have full access during normal working hours to Contractor's priced records, purchase orders, invoices, receipts and time sheets relating to such Work, in order to verify the cost of the Work and any burdens or overheads and profit relating thereto. Such auditing rights of Crown shall not apply to the breakdown of agreed upon rates, percentages and mark-ups.

   B. All payments made pursuant to this Agreement by Crown shall be subject to final adjustment, as determined by audit performed pursuant to this Agreement.

15. **CONFIDENTIALITY**

   A. All information, however and whenever acquired, concerning Contractor, Crown and Crown's customers' respective businesses, interests, and activities, including without limitation, all information regarding system designs system planning, technical data, customer lists, trade secrets, marketing, business plans, personnel, financial reports, forecasts, internal organization, including all copies thereof and all reports, analysis and memoranda incorporating or referencing same (collectively referred to hereinafter as "Confidential Information") is confidential and proprietary. Each party shall hold Confidential Information received from the

other party in strict confidence, shall use such information only for the purpose for which it is disclosed and in accordance with this Agreement, and shall not disclose or use the Confidential Information for the benefit of any third party without the prior express written approval of the disclosing party, except that the receiving party may disclose Confidential Information to its agents, servants, employees, and subcontractors who need to know the Confidential Information to allow the receiving party to fulfill its obligations under this Agreement. Contractor hereby agrees that it shall not develop any new techniques or ideas relating to Crown's proprietary or Confidential Information except to improve Contractor's efficiency in performing the Work, and Contractor hereby assigns to Crown any and all right, title and interest Contractor may have in or to any new techniques or ideas relating to Crown's proprietary or Confidential Information that may be developed by Contractor or any Lower Tier Contractor in or as a result of performing the work.

B. The confidentiality restrictions of this Agreement shall not apply to any information: (i) lawfully received from another source free of restriction and without breach of this Agreement; (ii) known to the receiving party at the time of disclosure except for information previously provided or made available by Crown; or (iii) independently developed or obtained by the receiving party without reference or resort to the other party's Confidential Information. The receiving party shall promptly return the Confidential Information upon the disclosing party's request.

C. The obligation to protect the confidentiality of Confidential Information disclosed by either party to the other party shall survive the expiration, termination or assignment of this Agreement for a period of one (1) year.

D. To the fullest extent permitted by the U.S. Copyright Act (17 U.S.C. §101 et, seq., and any successor statute), any additional Confidential Information created as a result of this Agreement and any deliverables and work product delivered by Contractor to Crown shall constitute "work made for hire," and the ownership of such Confidential Information and work product shall vest in Crown at the times they are created. To the extent such Confidential Information and/or work product does not constitute "work made for hire" under applicable law, Contractor hereby irrevocably assigns and transfers to Crown all worldwide right, title and interest therein that Contractor may now have or which Contractor may hereafter acquire, without further consideration from Crown. The foregoing notwithstanding, Contractor shall not be required to assign to Crown any right in or to any invention for which no equipment, supplies, facilities or trade secret information of Crown was used and which was developed entirely on Contractor's own time, unless: (i) the invention relates directly to the business of Crown or to Crown's actual or demonstrably anticipated research or development; or (ii) the invention results from any Work performed by Contractor for Crown. Contractor hereby agrees to take all such further action (including, but not limited to, the execution, acknowledgement, delivery and assistance in preparation of documents or the giving of testimony) as may be requested by Crown to evidence, vest, transfer or confirm Crown's right, title and interest in and to such Confidential Information, work product and/or invention. Notwithstanding the foregoing, any reuse or adaptation by Crown of Work product provided by Contractor on a project, for use on other projects by Crown without specific written consent of Contractor, shall be at Crown's sole risk and without liability of Contractor. Crown shall indemnify Contractor for all liability in connection with such unauthorized reuse of documents.

E. Contractor will not disparage Crown or otherwise adversely affect the reputation of Crown or of Crown's customer, nor disclose any Confidential Information to any entity concerning their business affairs.

F. Because money damages would not be a sufficient remedy for a breach of this Agreement, Crown shall be entitled to obtain injunctive relief in addition to monetary damages if a breach were to occur.

16. **PUBLICITY**

A. Neither party shall publicly advertise or publish information concerning the entry into, execution of, terms or delivery of this Agreement, including, but not limited to the nature of this Agreement, its terms or conditions, or the terms and conditions of a Contract Document issued hereunder,

without the prior written consent of the other party. Neither party will delay or withhold such consent unreasonably.

B. Neither party shall use the name or trademark of the other or any of their respective parent companies, subsidiaries, affiliates or partners with respect to any advertising, promotion, publicity or representation that either party may make in connection with its business, services and/or product lines, as applicable, without the prior written consent of the other party. Neither party will delay or withhold such consent unreasonably.

## 17. NOTICES

A. Any notice delivered under this Agreement shall be in writing and shall be delivered by facsimile (with receipt confirmed), certified mail or recognized overnight courier service addressed to the parties at the addresses set forth on the signature page of this Agreement or to such other address as a party may subsequently designate in a written notice delivered pursuant to this provision.

B. Any notice given by Certified U.S. Mail or courier delivery service shall be effective on the earliest of (i) the expiration of five (5) business days after the day it is mailed, or (ii) the date of receipt as evidenced by the U.S. Postal Service's domestic return receipt or courier delivery service receipt. Any notice given by sending a facsimile to the applicable facsimile telephone number shall be effective as of the next business day after the date of confirmed receipt of such facsimile as shown by a facsimile confirmation report.

## 18. RELATIONSHIP OF PARTIES

A. Contractor's relationship with Crown pursuant to this Agreement is that of independent contractor. Neither this Agreement nor any Work performed pursuant to this Agreement shall be deemed to create an employment relationship between Contractor and Crown or Crown's customer. Contractor hereby acknowledges that neither it nor any of its employees is entitled to any benefits or privileges of any kind which are normally or at any time extended by Crown to its employees, including, but not limited to, health or life insurance, pensions or profit sharing. Contractor shall be responsible for all matters relating to Contractor's employment of personnel, including, but not limited to, compliance with all applicable Federal, state and local laws relating to workers' compensation insurance and claims, unemployment compensation insurance and disability insurance. Contractor hereby covenants with Crown that Contractor shall comply with all legal requirements arising as a result of this Agreement and/or the Work performed pursuant hereto, including, but not limited to, the filing of tax returns, and Contractor hereby agrees to indemnify Crown and Crown's customer(s) from Contractor's failure to so comply. All persons employed by Contractor in the performance of the Work shall be under the sole and exclusive direction and control of Contractor. Contractor shall be separately and exclusively responsible for the acts and omissions of its employees and those of its Lower Tier Contractors. Contractor shall be responsible for all withholding from its employees' wages as required by law, and for making all contributions in respect thereof required of employers.

B. The parties acknowledge that Crown Castle USA Inc. has entered into this Agreement on behalf of itself and certain of its affiliates for convenience in order to establish uniform terms and conditions for Work awarded by any of such Crown affiliates to Contractor. The foregoing notwithstanding, Contractor hereby agrees that any claim Contractor may have arising out of or relating to this Agreement or any Work performed by Contractor shall be made only against the particular Crown entity which executed the applicable Project Appendix and issued the applicable Purchase Order. Contractor further agrees that it shall have no claim against any other Crown entity or affiliate based only on the manner in which this Agreement was executed by Crown.

C. Contractor further agrees to not divert or solicit directly or indirectly from Crown to itself or any third parties, or solicit from any of Crown's customers or potential customers on behalf of itself or any third parties, business opportunities that Crown presents to Contractor in which Crown proposes to subcontract all, or a portion thereof, to Contractor.

19. **APPLICABLE LAW; VENUE**

    This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without regard to conflicts of law principles. All suits, actions or other proceedings brought by Contractor against Crown arising out of or relating to this Agreement shall be brought only in the Court of Common Pleas, Allegheny County, Pennsylvania or the United States District Court for the Western District of Pennsylvania. In connection with any suit, action or other proceeding brought by Contractor against Crown, Crown (a) irrevocably submits itself to the non-exclusive jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania or the United States District Court for the Western District of Pennsylvania for the purposes of any such suit, action or other proceeding; (b) waives and agrees not to assert, by way of motion, as a defense, or otherwise, in any suit, action or proceeding, (i) any claim that Contractor is not personally subject to the jurisdiction of the above-named courts, (ii) the suit, action or proceeding is brought in an inconvenient forum, or (iii) the venue of the suit, action or proceeding is improper.

20. **AMENDMENTS; NO WAIVER**

    No amendment, waiver or discharge of any provision of this Agreement will be effective unless made in a writing that specifically identifies this Agreement and the provision intended to be amended, waived or discharged and is signed by Crown and Contractor. Each such amendment, waiver or discharge will be effective only in the specific instance and for the purpose for which it is given.

21. **CUMULATIVE REMEDIES**

    The enumeration of specific rights and remedies of Crown shall not be construed to deny the existence or the effect of, or to impair or diminish, any other rights or remedies of Crown available at law or in equity.

22. **SEVERABILITY**

    If any provision of this Agreement is held to be invalid, illegal or unenforceable in any jurisdiction, for any reason, then, to the fullest extent permitted by law, all other provisions hereof will remain in full force and effect in such jurisdiction and will be liberally construed in order to carry out the intent of the parties hereto as nearly as may be possible, and such invalidity, illegality or unenforceability will not affect the validity, legality or enforceability of any other provision hereof. Any court or arbitrator having jurisdiction over this Agreement shall have the power to reform such provision to the extent necessary for such provision to be enforceable under applicable law.

23. **ASSIGNMENT**

    Contractor shall not assign any right or interest under this Agreement or, subject to the provisions of **Section 5** of this Agreement; delegate any obligation under this Agreement or any other Contract Document without the prior written consent of Crown. In the event that Crown shall consent to any assignment or subletting, the Contractor shall remain wholly liable for any Work by, or actions of, such transferee. Crown may assign this Agreement or any related agreements to its parent or any joint venture in which it participates, or any subsidiary, affiliate, or successor to Crown, its parent or any such joint venture.

24. **CONSTRUCTION**

    Crown and Contractor acknowledge that this Agreement shall not be construed in favor of or against Crown solely on the basis of the fact that Crown drafted the Agreement and that this Agreement shall not be construed as an offer until such time as it is executed by one of the parties and then tendered to the other party.

25. **TERM OF AGREEMENT**

    This Agreement shall become effective on the date first above written. Unless sooner terminated in accordance with Article 11--Termination, this Agreement shall remain in force and effect for a one (1) year period, with automatic renewal for successive annual one (1) year periods, provided that either

party may terminate this Agreement as of the end of any such annual period by giving no less than thirty (30) days prior written notice thereof to the other party.

26. **ENTIRE AGREEMENT**

This Agreement and the other Contract Documents constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior or contemporaneous oral or written communications, understandings or agreements between the parties with respect to such subject matter. In no event shall preprinted terms or conditions found on any proposal, acknowledgment or other document issued by Contractor (whether or not signed by Crown) be considered part of, or an amendment or modification to, this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written, intending to be legally bound hereby.

**CROWN:**
CROWN CASTLE USA INC.
for itself and its affiliates

By: _____
Name: DAVE TANCZOS, AREA PRESIDENT
Title: Great Lakes Area

**CONTRACTOR:**
Tower Reinforcement, Inc.

By: _____
Name: Michael J. Kopshever Sr.
Title: President

**Address:**
Crown Castle USA Inc.
2000 Corporate Drive
Canonsburg, Pa 15317
Attention:   Procurement Services Department
Facsimile:   724-416-2130

**Address:**
2301 W. Michigan, Suite I
Evansville, IN 47712

Attention:   Michael J. Kopshever Sr.
Facsimile:   812-421-1366

**EXHIBIT A**
**A&E SERVICES MASTER AGREEMENT**
**CONTRACTOR INVOICING REQUIREMENTS**

A. The following information **MUST** be included with each and every invoice that Contractor submits to Crown for payment, unless a particular item is clearly inapplicable or unknown. Project Appendices may impose additional requirements applicable to work performed on specific projects for certain Crown customers.

1. Crown site Business Unit Number. Add per line item if Invoice covers more than one site.
2. Contractor's Name, phone number and contact
3. Contractor's Crown Vendor No.
4. Contractor's Invoice No.
5. Invoice Date
6. Time period covered by Invoice
7. Contractor's Master Agreement No.
8. Project Appendix No.
9. Project Name
10. Candidate Site Identification (Site Acquisition Work)
11. Crown Purchase Order No.
12. Crown Customer Name
13. Contractor's List of its Relevant Subcontractors
14. JDE Coding if known (XXXXX-XXXX-XXXXX)

B. Contractor shall send its **original** Invoice to:

Crown Castle USA Inc.

Accounts Payable Department

2000 Corporate Drive

Canonsburg, PA 15317

with **copies** sent to the Crown office awarding and responsible for the Contractor's Work.

*Failure to comply with any aspect of these Contractor Invoicing Requirements will result in delay to payment being effected by Crown.*

·

**EXHIBIT B**
**A&E SERVICES MASTER AGREEMENT**
**FORM OF CHANGE ORDER**

Vendor No. _____          Master Agreement No.: _____

Change Order No.: _____          To Project Appendix No.: _____

Date: _____          BU Number: _____

Contractor Name: _____

This Change Order is issued, as of the date set forth above by Crown Castle USA Inc. or its affiliate named on the signature page hereto ("Crown"), to the above-named contractor ("Contractor").

1.   **Incorporation of A&E Services Master Agreement.**

Contractor and Crown are parties to that certain A&E Services Master Agreement dated _____ (the "Master Agreement") which provides certain uniform terms and conditions which govern the parties' responsibilities. Pursuant to the Master Agreement, Crown and Contractor have entered into the above-identified Project Appendix (the "Project Appendix"). The Master Agreement and the Project Appendix are hereby incorporated by reference into this Change Order. Capitalized terms used in this Change Order and not otherwise defined herein shall have the respective meanings ascribed to them in the Master Agreement.

2.   **Change Order Statement of Work.**

Except as otherwise provided in this Change Order, Contractor, at its expense, shall furnish all labor, materials, tools, machinery, vehicles, transportation and other facilities necessary to perform the additional or changed Work described below (the "Scope of Work"), and, as applicable, the Project Appendix and the Purchase Order are hereby deemed to be amended accordingly.

_____
_____
_____
_____

3.   **Contract Price Adjustment.**

Original Contract Amount:          $_____
Amount of this Change Order:       $_____
Revised Contract Amount:           $_____

4.   **Time of Completion.**

The schedule for the Project described in the Project Appendix, as amended by this Change Order, shall be extended/shortened by _____ days and shall be substantially completed no later than
_____
(Insert Date)

5.   **Other Documents.**

The following additional documents are incorporated by reference into this Change Order:

**Crown Castle USA Inc.**

By:    _____
Name:  _____
Title: _____

**EXHIBIT C**
**A&E SERVICES MASTER AGREEMENT**
**INSURANCE REQUIREMENTS**

A. During the performance of Work, Contractor, at its sole expense, shall maintain in effect at all times insurance coverage with limits not less than those set forth below:

I. Commercial general liability Insurance (occurrence based) providing coverage for:

a) Premises and operations
b) Contractual liability
c) Personal injury liability (employment exclusion deleted)
d) Worldwide and/or global liability coverage if work is performed in Puerto Rico or outside the Continental United States of America.

Minimum limits (bodily injury and property damage, combined) for the foregoing coverage shall be $1,000,000 per occurrence, $2,000,000 general aggregate (per Project) and $2,000,000 products/completed operations aggregate.

II. Professional liability insurance covering the scope of services described in the applicable Project Appendix to be performed by Contractor, with minimum limits of $1,000,000 for each claim and $1,000,000 in the aggregate. Contractor shall maintain such coverage in effect for not less than three (3) years from Final Completion of the last Project performed by Contractor pursuant to this Agreement if a "claims-made" policy, but not required if "occurrence" type.

iii. Comprehensive automobile liability insurance covering the use and maintenance of all automobiles and other vehicles (owned and/or leased) with minimum limits of coverage for bodily injury and property damage combined at $1,000,000 per accident.

iv. Workers' compensation insurance and other employer's liability coverage (including Jones Act and Longshoremen's), for all employees in accordance with statutory requirements, with minimum limits of $100,000 per accident (employer's liability), $100,000 each person (disease) and $500,000 policy limit (disease). If providing services in Puerto Rico, or outside of the continental United States, worldwide and/or global liability insurance must be provided for all employees in accordance with all applicable statutory requirements. In the event that Contractor is an individual or sole proprietor, Contractor shall provide to Crown written confirmation that it has no employees. If Contractor later hires employees, the foregoing requirements shall apply from the date of the hiring of Contractor's first employee.

B. The insuring carriers and the form of the insurance policies shall be subject to approval by Crown and shall provide that not less than thirty (30) calendar days prior written notice shall be given to Crown prior to cancellation, termination or material alteration of said policies of insurance. **Crown Castle USA Inc. and its parent, joint ventures, subsidiaries, and affiliates, as their interest may arise,** shall be named as additional insureds on all applicable policies other than workers' compensation insurance and professional liability insurance. Pursuant to the applicable Project Appendix, Crown may require that its customer also be named as an additional insured. All such insurance policies shall waive the right of recovery or subrogation against Crown and its customer. Contractor shall furnish to Crown certificates evidencing such insurance coverage in a form satisfactory to Crown prior to and as a condition to becoming an approved Crown contractor, and thereafter upon renewal of coverage or at the request of Crown. Prior to the commencement of any Work, insurance certificates shall be delivered to the Crown office specified in the applicable Project Appendix, attention: Vendor Administration. At any time and from time to time after the execution and delivery of the foregoing Agreement, Crown may require Contractor to obtain and maintain additional or alternative insurance coverages with limits in addition to or greater than those described above.

## EXHIBIT D
## Pricing Schedule

The below unit pricing is firm and fixed for 24 months after execution of this Agreement for following services in accordance with the latest revision of the Crown "Tower Structural Analysis Scope of Work". Pricing for structural-related services that are out-of-scope are to be negotiated separately for each occurrence between the Contract and Crown.

1. Structural Review and Opinion Letter:     $Insert Unit Price

2. Monopole Structural Analysis:     $Insert Unit Price

3. Self Support Tower Structural Analysis:     $Insert Unit Price

4. Guyed Tower Structural Analysis:     $Insert Unit Price